**PIERRE LA JARD WILLIS v. MAUD VAN WOY, et al.**

20 So. (2nd) 690            January Term, 1945
January 16, 1945            En Banc
Rehearing denied February 2, 1945

*Milam, McIlvaine & Milam* and *E. T. McIlvaine*, for appellant.

*Alley, Drew, Burns & Middleton* and *R. C. Alley*, for appellees.

CHAPMAN, C. J.:

On a former appeal the sufficiency of a second amended bill of complaint in the case at bar was sustained as against a motion to dismiss on various grounds. See Van Woy v. Willis, 153 Fla. 189, 14 So. 2nd) 185. On the going down of the mandate an answer thereto was filed by Pierre L. Willis. Evidence on the issues made by the pleadings was taken by the respective parties and on final hearing the equities of the cause were found to be with the plaintiff below, and a final decree was entered accordingly, and the defendant below has perfected an appeal here.

The answer denied that the Rockefellers were willing to sell The Casements for less than $75,000.00, except for an oral agreement between the appellant and the Rockefellers made through the latter's agent, Charles O. Heydt, on September 6, 1940. The agreement gave the defendant the exclusive right to purchase The Casements for $37,500.00, and provided that Willis would notify the Rockefellers of the latter's willingness to purchase the property by September 16, 1940, and pay $1,000.00 cash, and one week thereafter submit a statement of the people who proposed to establish a school in The Casements and such persons were satisfactory to Mr. Rockefeller. The option price was fixed at $37,500.00 and submitted in the strictest of confidence.

The answer alleged that at the time of the occurrence of the matters alleged in the amended bill the answering defendant was the owner of the land by virtue of an option and for this reason an interview with the Rockefellers by the plaintiff (below) in an effort to obtain a reduced and more favorable price of the property (under $75,000.00) would have been fruitless because the legal duty of the Rockefellers under the option was to convey the property to the defendant for the sum of $37,500.00. The defendant denied any effort on his part in preventing plaintiff from contacting the Rockefellers; that she had full knowledge of the closing date of the transaction at attorney Landis' office in DeLand and refused or declined to attend or be present when the title was transferred.

The chancellor below, in his final decree, set out and recited many of the salient facts based on the record, and reached conclusions therefrom and placed same in the decree. The recitation of facts and conclusions disclose a thorough and careful consideration of the controversy and his language is viz:

"This Court finds:

During the early part of the year 1940, Willis, learning that the Rockefeller home at Ormond Beach was for sale, proposed to the owners that it be put to use as a private school for girls. Willis submitted the plan by letter, dated March 21, 1940, directed to Mr. C. O. Heydt, agent for the Rockefellers, wherein Willis identified himself as one possessing wide experience in organization work of that character.

"The price then placed upon the property by the Rockefellers was $75,000.00 and it was proposed that a fee for Willis and for organization expense amounting to $15,000.00 be added to that price, of which amount the Rockefellers were to contribute $7500.00. The plan did not materialize and on April 11, 1940, Heydt suggested that Willis 'undertake the enterprise on his own account; if he effects a sale, we will compensate him as he desires; but, as I have already intimated, the idea of hiring somebody to organize a school and then sell the property to the school is something which my principal does not wish to do.'

"Willis thereupon began efforts to find a purchaser suitable to such a venture and during the Summer of 1940 learned from a mutual acquaintance that plaintiff was a prospect. He met plaintiff in Washington, D. C. on or about August 21, 1940. Plaintiff was advised by Willis, according to his own statement, that the only way the property could be obtained was through him 'because Mr. Rockefeller didn't wish to sell this property directly to any school.' Plaintiff was then informed that the price was $75,000.00.

"On August 26, 1940, Willis wrote Heydt: 'I might be able to pay Mr. Rockefeller for the property $25,000.00 cash, but would need approximately thirty days to secure the money.' Plaintiff was never told of this offer, and at her next meeting with Willis in New York City, on September 6, inquired if a

more favorable price than $75,000.00 could be obtained. Willis insisted that such was not possible. On that same day Heydt wrote Willis: 'Mr. Rockefeller is willing to sell The Casements property and the strip to the ocean, both at Ormond Beach, Florida, for $37,500. net cash;'

"Willis never did advise plaintiff of this reduction in price, and on September 18, 1940, still insisting that Rockefellers' price was $75,000.00, received from plaintiff one check for $4000.00 and one check for $1,000.00. Undoubtedly, these checks were accepted by Willis with the understanding that he was to acquire the property in question from the Rockefellers for plaintiff. It thereupon became the duty of Willis to deal—not for himself—but for plaintiff. See Van Woy v. Willis, supra.

"On October 21, 1940, Willis received written contract from the Rockefellers, calling for the sale of the property to himself, individually for $37,500.00. The plaintiff was never advised of the terms of that contract. By reason of the premises, plaintiff nevertheless, was entitled to its benefits. See Phipps v. Quinn, 93 Fla. 800, 113 So. 419.

"Subsequently, plaintiff, believing that she was required to pay $75,000.00 for the property, accepted the deed of conveyance from the Rockefellers. By manipulation, Willis, obtained for himself the difference between the pretended sales price of $75,000.00 and the amount of $37,500.00 actually paid to the Rockefellers. This difference is represented by the notes and mortgages sought to be cancelled in this suit. On January 29, 1941, and prior to learning the true facts, plaintiff paid to Willis $5,000.00 on account.

"Defendant argues that the letter dated September 6, 1940, from Heydt, and stating that Rockefeller was willing to sell the property for $37,500.00, in effect, gave Willis an 'option' and that thereafter it was proper for him to deal with the property so as to make as much profit for himself as was possible.

"The answer to this contention lies in the fact that the letter in question was not an 'option,' nor did it possess any of the characteristics if a fully completed contract. The letter was a mere offer of contract, which did not ripen into

a fully completed contract until acceptance. At the time of acceptance Willis had become obligated to deal for plaintiff. Hence, it follows that at the time of being commissioned by plaintiff to act on her behalf, Willis had no completed or consummated right or interest in the property which was subject to sale.

"Furthermore, Willis undoubtedly realized that Miss Van Woy understood that she was dealing with him as a 'go-between' in making a purchase from the Rockefellers. It must be assumed now that he acted pursuant to that understanding. In fact, Willis made a charge against and collected from plaintiff for those expenses which ordinarily would have been charged by an agent against his principal incurred in carrying out a commission such as this."

On September 6, 1940, Mr. Heydt, Rockefeller's agent, advised Mr. Willis that "The Casements" could be bought for $37,500.00. Six conditions with reference to the sale were outlined. He was required to pay $1,000.00 and accept the offer not later than September 16, 1940; one week after September 16, 1940, a statement of the people behind the scheme to establish a school in The Casements should be submitted; if the school sponsors were approved, then Willis should pay $4,000.00 additional to be applied on the purchase price; the property was to be transferred on or before November 1, 1940, and the remaining sum of $32,500.00 paid; if the school sponsors were not approved, then the $1,000.00 would be returned and the deal cancelled. It is true that Mr. Willis, on October 5, 1940, sent a check for the sum of $1,000.00, but it was returned. The offer to sell for the sum of $37,500.00 never was accepted by Mr. Willis according to the terms of the letter, but was accepted after receiving Miss Van Woy's money, and the contention that these negotiations resulted in an option on behalf of Mr. Willis is clearly untenable. See Frissell v. Nichols, 94 Fla. 403, 114 So. 431.

The record discloses that Maud Van Woy paid Mr. Willis certain money in the form of checks and these checks were cashed by Mr. Willis. After acquiring this money he paid the first cash payment to the Rockefellers or their agents or representatives. He advised her that the price could not be

reduced from $75,000.00. Although he knew the property was purchasable for $37,500.00 if used as a school, he withheld this information. He was Mrs. Van Woy's agent in the purchase and the utmost of good faith was required of him. The failure of Mr. Willis to observe toward his principal the relationship, duty and obligation required by law makes him in this instance a trustee for his principal.

It is well settled that the findings of a chancellor on the facts where the evidence is heard by him, and the witnesses are before him, are entitled to more weight in the appellate court than where findings are made in a cause where the testimony was not taken before the chancellor, yet in either case the chancellor's findings should not be disturbed by an appellate court unless shown to be clearly erroneous. See Kent v. Knowles, 101 Fla. 1375, 133 So. 315; Farrington v. Harrison, 95 Fla. 769, 116 So. 497; Travis v. Travis, 81 Fla. 87 So. 762.

The decree appealed from failed to provide compensation for services rendered by Mr. Willis to his principal, Miss Maud Van Woy in negotiating the purchase of "The Casements." The value of these services should be ascertained and the amount credited against the money decree entered against Mr. Willis in behalf of Maud Van Woy. The decree in all other respects should be affirmed.

The decree appealed from is affirmed but modified, with directions to the court below to ascertain the value of the services rendered by Mr. Willis to Maud Van Woy for negotiating the purchase of The Casements. The value of these services should then be credited against the money decree previously entered against Willis in favor of Maud Van Woy in the case at bar.

It is so ordered.

TERRELL, BROWN and BUFORD, JJ., concur.

THOMAS, ADAMS and SEBRING, JJ., dissent.

CHAPMAN, C. J.:

On petition for rehearing counsel for Willis contend that compensation and reasonable expenses for the negotiation of the $30,000.00 loan on "The Casements" should be allowed Willis in addition to the value of his services rendered Miss

Van Woy for the purchase of "The Casements." It is our conclusion that the contention has merit and the value thereof should be ascertained and allowed. Otherwise the petition for rehearing is denied.

It is so ordered.

TERRELL, BROWN and BUFORD, JJ., concur.

THOMAS, J., dissents.

THOMAS, J., dissenting:

I think the rehearing should be granted.

ADAMS and SEBRING, JJ., concur.