[No. 35367. Department One. December 15, 1960.]

A. LEPPALUOTO, *Appellant,* v. HARLAN J. EGGLESTON *et al.,* *Respondents.*[1]

[1]Reported in 357 P. (2d) 725.

*Grosscup, Ambler, Stephan & Miller* and *Richard P. Moser* (*Dusenbery, Martin, Schwab, Beatty & Parks* and *Alex L. Parks*, of counsel), for appellant.

*Evans, McLaren, Lane, Powell & Beeks* and *Gordon W. Moss*, for respondents.

DONWORTH, J.—This is a derivative action brought by appellant as the owner of one half of the outstanding stock of Alaska Towing & Salvage, Inc., an Alaska corporation, against respondents Eggleston and wife as the owners of the remaining half of the corporate stock. Mr. Eggleston will herein be referred to as respondent, since his acts constitute the basis of the action. The corporation was also named as a defendant because it could not be made a party plaintiff. It will be referred to herein as ATS.

Appellant and respondent had known each other for more than twenty-five years prior to the transaction involved in this action. Appellant, during the years 1954 to 1956 and for many years before that time, was and had been the general manager and a one-third stockholder in several companies which were engaged in the tug and barge transportation business on the Columbia River and on the Pacific coast.

Respondent, in 1953, was doing business as Eggleston Towing Company. He owned six tugs and nine barges and was operating them on the Columbia River. He became interested in purchasing certain tugs and barges located on the Kuskokwim River in Alaska, referred to as the Haddock equipment. He was negotiating with the owner and

also endeavoring to procure a bank loan secured by a mortgage on his own tugs and barges.

A few months earlier, appellant had had occasion to fly to Alaska on business, and while there he had seen the Haddock equipment. In the fall of 1953, respondent contacted appellant regarding the possibility of their purchasing this Haddock equipment on an equal basis. They had several meetings at which this subject was discussed at length. The parties finally agreed to organize an Alaska corporation for this purpose in which each of them would own one half of the stock. For convenience, the Haddock property was purchased in respondent's name and later transferred to the Alaska corporation which had been formed (ATS).

Respondent was elected president and general manager of the corporation, and appellant was elected secretary-treasurer. The board of directors consisted of appellant and his wife and respondent and his wife.

After the purchase of the Haddock equipment but before operations on the Kuskokwim River started, in the spring of 1954, respondent advised appellant that he had entered into a joint venture with another Alaska corporation, Alaska Rivers Navigation Company (herein referred to as ARN), whereby they were jointly to operate a tug and barge business on the Kuskokwim River for three years (1954, 1955, and 1956), the net profits to be shared equally between respondent and ARN. Respondent's share legally inured to the benefit of ATS.

We do not attempt to set out all the matters in dispute between the parties in connection with this joint venture. The foregoing constitutes a sufficient background for an understanding of the nature of the action.

In April, 1957, appellant instituted this action, alleging, on information and belief, that respondent, in his fiduciary capacity as an officer, director, and general manager of ATS, had violated his obligations to his own unlawful gain and profit in six particulars with resulting loss to the corporation.

Appellant prayed that respondent and his wife be restrained from destroying or removing the books and records of the corporation or those relating to the joint venture, and

"(3) That an accounting be had with respect to the transactions, business and affairs of said corporation, the operation of said joint venture and of the individual defendants, Harlan J. Eggleston and Clover Eggleston, and to assist the court in conducting the same that a competent accountant be appointed to audit the books, records, documents and accounts of said corporation, joint 'Venture' and of said individual defendants, and to determine, segregate, recapitulate in summary form and report to the court the facts thus ascertained.

"(4) Upon completion of said determination and upon concluding said accounting, that the defendants Harlan J. Eggleston and Clover Eggleston be required to assign, transfer and deliver over to said corporation all funds and property wrongfully withheld from it or diverted from it to the personal use and benefit of said defendants Harlan J. Eggleston and Clover Eggleston, including any profits made by them through operations carried on in competition with said corporation."

Respondent's answer denied the allegations relating to his wrongful acts and, in his cross-complaint, prayed that, because of the equal ownership of stock and the division among the directors, the corporation be dissolved and liquidated by court order, and that its net assets be distributed to the shareholders in accordance with an audit and accounting.

Appellant's reply denied that the reason the corporation was unable to function for the benefit of its shareholders was the deadlock between its directors, and alleged that the impasse was due to the continuing refusal of respondent and his wife to honor their fiduciary obligations to the corporation. Appellant further denied that there was any necessity for dissolving the corporation, and alleged that the court had no jurisdiction to dissolve an Alaska corporation.

The trial of this case began on March 5, 1958, and lasted ten days. To attempt to include a resume of the evidence

would extend this opinion beyond all reasonable bounds. Furthermore, a discussion of the myriad of accounting details would add nothing to the case law of this state. About a third of the statement of facts (850 pages) consists of the opening statement of counsel (71 pages) and colloquies between the trial court and counsel as to how certain items should be charged to the parties.

The principal issue related to a lighterage operation in the Bering Sea which respondent conducted during the 1956 season. Respondent contended that this operation was beneficial to the joint venture because this service was requested by Morrison-Knudsen Company, Inc., a contracting firm which was engaged in several large construction jobs in the area. This contractor was also the biggest single shipper of freight on the Kuskokwim River. Respondent testified that, if the lighterage service had not been furnished to this contractor to unload its freight in the Bering Sea, the contractor might have withdrawn its patronage from the Kuskokwim River operation, which would have been very detrimental to the joint venture. The annual audit of the 1956 operations, made by a certified public accountant prior to the commencement of this action, showed a profit of approximately seventeen thousand dollars for the lighterage business. However, it subsequently appeared from the audit (which was approved by the court in March, 1959) made by Haskins & Sells, whom the court appointed as special referee, that, after recasting the account in accordance with the trial court's order of reference, the lighterage operation lost approximately twenty-six thousand dollars in 1956.

On March 21, 1958, the trial court made and entered its interlocutory findings of fact, conclusions of law, and order of reference.

We think that this order states succinctly the issues in the case and the court's disposition of both the factual issues and the legal questions involved in the case. Therefore, we quote the order in full except portions relating to a stipulation between the parties. It reads as follows:

"FINDINGS OF FACT

"I. Defendant Harlan J. Eggleston entered into the original Joint Venture agreement with Alaska Rivers Navigation Company, under date of April 9, 1954, as a trustee for and in behalf of Alaska Towing & Salvage, Inc.; and said original Joint Venture agreement was limited to the transportation of freight and towing and barging on the Kuskokwim River in Alaska using the vessels and equipment listed in said agreement as Schedules 'A' and 'B' only.

"II. The performance of lighterage operations in Bering Sea and specifically at Capes Newenham and Romanzof was outside the scope of the original Joint Venture agreement.

"III. During the operating season of 1956, the Joint Venture undertook to perform lighterage operations for Morrison-Knudsen Co. in the Bering Sea at Capes Newenham and Romanzof, and the continuation of freight revenue from Morrison-Knudsen Co. for transporting the latter's freight on the Kuskokwim River was, to an extent, dependent upon the Joint Venture's undertaking the lighterage operation at Capes Newenham and Romanzof for Morrison-Knudsen Co.

"IV. In January of 1956, defendant Harlan J. Eggleston discussed the proposed lighterage operation with plaintiff Leppaluoto, but at that time plaintiff understood that the contemplated lighterage operation was to be between defendant Eggleston and Alaska Rivers Navigation Company under a separate Joint Venture and that Alaska Towing & Salvage Inc. was not to be involved in the lighterage agreement; and plaintiff did not realize until the summer of 1956 that the aforesaid lighterage operation was part of the Joint Venture operation in which defendant Harlan J. Eggleston was a trustee for Alaska Towing & Salvage, Inc.

"V. The aforesaid lighterage operation was a business venture of such importance and with such a high risk and such a departure from the usual business of the corporation Alaska Towing & Salvage, Inc., that the Board of Directors of Alaska Towing & Salvage, Inc. had a right to approve or disapprove the same before the corporation could be committed to enter into said lighterage operation. The Board of Directors of Alaska Towing & Salvage, Inc. was controlled 50% by defendant Harlan J. Eggleston and 50% by plaintiff A. Leppaluoto, and the Board of Directors as a whole did not approve the corporation's entering into said lighterage agreement.

"VI. Plaintiff Leppaluoto objected strongly to defendant

Harlan Eggleston chartering any personally-owned or personally-controlled equipment to any party whatsoever in Alaska and particularly to any party or under any circumstances in which said personally-owned or controlled equipment could be placed in competition with the business of defendant corporation ALASKA TOWING & SALVAGE.

"VII. Thereafter defendant Harlan Eggleston secretly entered into a charter arrangement (the actual transaction being unknown at the time to plaintiff Leppaluoto) whereby defendant's own equipment was to be used on the outside lighterage operation, without first obtaining the approval or consent of the Board of Directors of Alaska Towing & Salvage, Inc. or giving notice to plaintiff Leppaluoto or his wife of entering into such charter arrangement.

"VIII. Although separate accounts were kept by Alaska Rivers Navigation Company (the party charged with the duty of bookkeeping under the Joint Venture agreement) of the river freight and lighterage income and expenses of Kuskokwim River lines (the Joint Venture) during the 1956 season, both operations were considered as part of the Joint Venture overall operation. According to the annual report of the Joint Venture operation for the year 1956, prepared by Carl W. Eiseman, Certified Public Accountant, which is in evidence as an exhibit in this cause, the river freight operation showed a net profit of $69,850.00, the lighterage operation showed a net profit of $17,286.00, for a total net income of the Joint Venture of $87,136.00, of which Alaska Towing & Salvage, Inc. has heretofore received one-half, or the sum of $43,568.00. A copy of said annual report was received by plaintiff Leppaluoto in the early spring of 1957.

"IX. It is necessary to segregate, insofar as practicable, the business of the said lighterage operation from the business of the said Joint Venture. The Court is unable from such accounting work as has been done in the past to arrive at a proper accounting as between the said lighterage operation and the said Joint Venture operation, and in order to arrive at a proper accounting, a full and complete audit by an accounting firm acceptable to both parties is mandatory.

" . . .

"CONCLUSIONS OF LAW

"I. That the final decree to be entered herein should require the stockholders' advance accounts of the corporation Alaska Towing & Salvage, Inc. to be adjusted in

harmony with the stipulation of the parties set forth in Paragraph X of the Findings of Fact herein.

"II. That defendant Harlan Eggleston was at all times during and after February, 1954, and up to and including March 31, 1957, a trustee for and acting on behalf of defendant Alaska Towing & Salvage, Inc.

"III. That defendant Harlan Eggleston, (as President, General Manager, a stockholder in, and a member of the Board of Directors of Alaska Towing & Salvage, Inc.) had no right, power or authority to commit Alaska Towing & Salvage, Inc. to the performance of said lighterage operation nor was the said Alaska Towing & Salvage, Inc. ever so committed or bound.

"IV. That this cause is a derivative suit by plaintiff Leppaluoto against the named defendants for and on behalf of the defendant corporation Alaska Towing & Salvage, Inc. and the relief granted herein shall inure to the said corporation.

"V. That defendant Harlan Eggleston, in entering into said lighterage operation, was acting without the scope of his authority and without any consent, acquiescence or authority on the part of the Board of Directors of Alaska Towing & Salvage, Inc., and with respect to chartering his personally owned and/or controlled equipment was guilty of a breach of his fiduciary obligation to Alaska Towing and Salvage.

"VI. The accounts of the Joint Venture for the year 1956 should be re-audited with a view to separating the lighterage operation from the river freight operation, and upon completion and approval of said re-auditing, a decree should be entered herein whereby the corporation Alaska Towing & Salvage, Inc. shall share in neither the gains nor the losses from the lighterage operation, as the case may be; and if upon completion of said final audit the share of Alaska Towing & Salvage, Inc. of the net profits from the 1956 river freight operation exceeds the sum of $43,568.00, defendants Eggleston shall be required to pay to the corporation such excess, and if the share of Alaska Towing & Salvage, Inc. of the river freight net profit is less than $43,568.00, the corporation shall be required to pay to defendants Eggleston the difference between $43,568.00 and the corporation's share of the net profit from the river freight operation as adjusted.

" . . .

"ORDER OF REFERENCE

"I. That based upon the rulings of this Court hereinafter set forth in Paragraph III with respect to the allocation of profit and expenses as between said lighterage operation on the one hand and the said joint venture operation on the other, the accounting firm of HASKINS & SELLS, Seattle, Washington, certified public accountants, be, and the same hereby is appointed as a special referee to render to this Court a full and complete audit (and issue thereon its unqualified opinion subject only to such exceptions as shall be required from sound accounting principles and as specifically noted in said audit) of all the books, records and accounts, (including but not limited to invoices, receipts, checks, bills, vessel logs and other like or different data) of the following individuals and companies for the years 1954, 1955 and 1956 seasons. . . . [Detailed instructions to referee omitted.]"

The report of Haskins & Sells, certified public accountants, as a special referee, was submitted to the trial court about a year subsequent to the entry of the order of reference. The court approved this report, which showed that the corporation (ATS) was entitled to recover from respondent and his wife the sum of $13,001.86. On March 6, 1959, the court entered its decree accordingly. However, appellant was denied his application for attorneys' fees other than statutory.

Appellant has appealed from this judgment for $13,001.86 in favor of the corporation, contending, in his eight assignments of error, that the judgment should be larger, basing his contention on certain errors in regard to certain items in the accounting as directed by the trial court.

Respondent has not cross-appealed.

Before discussing appellant's eight assignments of error, it should be noted that, this being an appeal from a judgment stating an account, the presumption is in favor of the trial court's findings on contested items. See 1 C. J. S. at p. 689 and, also, *Whann v. Doell,* 192 Cal. 680, 221 Pac. 899 (1923). The burden is on appellant to show that there is no substantial evidence to sustain the findings of the trial court. This court will not try the case *de novo* on the merits on appeal. See *Thorndike v. Hesperian Or-*

*chards, Inc.,* 54 Wn. (2d) 570, 343 P. (2d) 183 (1959); *Wise v. Farden,* 53 Wn. (2d) 162, 332 P. (2d) 454 (1958). Furthermore, the findings of a special referee in stating an account are conclusive unless mistake or fraud is clearly apparent. See *Williams v. Lindblom,* 163 Ill. 346, 45 N. E. 245 (1896).

 In the case at bar there were two pivotal issues decided by the trial court: (1) That respondent had no express or implied authority to commit the corporation (ATS) to the lighterage agreement, that is, the transaction was *ultra vires,* and (2) respondent, in chartering his own equipment to the joint venture without the knowledge or consent of appellant, breached a fiduciary obligation to ATS. Both parties to this action accept these conclusions of law as fair and accurate. The fiduciary relationship between respondent Eggleston and ATS and the above-mentioned breaches of the obligation arising therefrom are unchallenged facts as found by the trial court. The rule of law applicable to these facts is this:

"Whether a director or other corporate officer be considered as an agent or as trustee, he is liable to the corporation . . . where he acts outside the scope of his authority to the injury of the corporation. . . ." 3 Fletcher, Cyclopedia Corporations, 526, § 1021.

Furthermore, the good motives or good intentions of the corporate officer in no way relieve him from liability. See *Gilbert v. Finch,* 173 N. Y. 455, 66 N. E. 133 (1903). If a corporate officer willfully performs an act which he knows, or ought to know, is unauthorized (an express finding in the case at bar), such person is clearly liable to the corporation for resulting damages. See Ballantine, Corporations (1946), 201. Directors and officers are fiduciaries with respect to the corporations they serve and, as such, are not permitted to retain any personal profit or advantage gleaned "on the side." See *Western States Life Ins. Co. v. Lockwood,* 166 Cal. 185, 135 Pac. 496 (1913). To cast aside any lingering doubts as to the status of corporate directors and officers in this state, RCW 23.01.360 specifically provides that:

"Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith, and with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions."

Summarizing, the profits gained from an unauthorized transaction, entered into by a corporate officer in behalf of the corporation, belong to the corporation, whereas the losses sustained in such a transaction are borne by the corporate officer himself. As we view the problem, the relief to which the corporation is entitled is no different whether the corporate officer engages in the unauthorized pursuit in his own behalf or whether he does so in behalf of the corporation, as in the present case. A wrong has been committed in either case.

" . . . The rule [of fiduciary accountability], inveterate and uncompromising in its rigidity, does not rest upon the narrow ground of injury or damage to the corporation resulting from a betrayal of confidence, but upon a broader foundation of a wise public policy that, for the purpose of removing all temptation, extinguishes all possibility of profit flowing from a breach of the confidence imposed by the fiduciary relation. . . ." *Guth v. Loft, Inc.*, 23 Del. Ch. 255, 270, 5 A. (2d) 503 (1939).

Applying these principles to the case at bar, we have (1) a fiduciary relationship, (2) a breach thereof, and (3) damages resulting therefrom. The duty and the breach are not at issue—the measure of damages is. Five of the eight assignments of error involve this one question.

Assignment of error No. 1 alleges that the court erred in failing to require that respondent Eggleston

" . . . make the Joint Venture and/or the respondent corporation whole with respect to benefits, revenues and emoluments received by them in connection with the tugs 'No NAME' and 'LULU BELLE'."

In answer, it should be noted that the trial court made no finding to the effect that respondents Eggleston made any personal profit from the operation of these tugs, nor that ATS suffered any losses in this connection. Furthermore,

the effect of the trial court's decree was to rescind the charter of the tug "No Name" to the joint venture so that the joint venture and ATS (to the extent of its one-half interest therein)[2] have been relieved of any obligation for charter hire, cost of transportation north, insurance premiums, or maintenance costs—these being the principal items involved in appellant's first assignment of error. Also, in regard to these tugs, it should be noted that ARN, as a party to the joint venture, was in the same position as ATS and would suffer in the same degree from any misfeasance of respondent Eggleston.

Assignment of error No. 2 concerns insurance proceeds received by respondents Eggleston when the tug "Kusko" was declared "a total constructive loss." Appellant urges that these proceeds, amounting to fifty-five thousand dollars, should be paid to ATS. With respect to this contention, it is noteworthy that the case law (summarized *supra*) relating to unauthorized transactions entered into by corporate officers is confined in scope to "profits" and "losses." The trial court specifically ordered that the premiums on the policy in question be paid by respondent Eggleston. Such being the case, the corporation (ATS) did not sustain any loss. By the very nature of the insurance contract, which is predicated upon the theory of *indemnification*, respondent could obtain no profit; at best, he could only be made whole. Furthermore, at the trial, appellant's own counsel expressed his satisfaction with what proved to be the trial court's ultimate disposition of this matter wherein respondent Eggleston was charged with the premiums and awarded the proceeds. Appellant cannot be permitted to take an inconsistent position on appeal.

Appellant's third assignment of error concerns a twenty-five thousand dollar charter hire paid by the joint venture to respondent Eggleston for the use of Eggleston's own equipment in the river freight operation. Appellant urges that this twenty-five thousand dollars should be paid over

---

[2]The joint venture, while nominally between ARN and Harlan Eggleston, was, for accounting purposes, in effect between ARN and ATS.

by respondent to ATS. What appellant overlooks again, as in assignment of error No. 1, *supra,* is the absence of any proof that this charter arrangement was in any way unfair or unreasonable, or that respondent Eggleston even made a profit from this transaction. Although the charter complained of was beyond the scope of respondent Eggleston's authority as an officer of ATS, absent proof of a profit by him or a loss to the corporation, appellant is not entitled to any relief with respect to this matter.

Assignment of error No. 4 presents the question of whether or not the respondent should have been ordered to return "all or an equitable portion" of the salary he received in 1956 from ATS. The basis for this contention is that respondent spent much of his time on purely personal endeavors. This presents a question of fact, to wit: Did Eggleston satisfactorily perform his duties as general manager of the joint venture, the job for which he was to be paid by ATS? That Eggleston, in one or more ways, breached a fiduciary obligation to his principal is not conclusive proof that he, in fact, failed to earn his salary. To the contrary, substantial evidence was presented by respondent to show that he devoted his full time and effort to his duties as general manager in 1956. The undisputed evidence also showed that the *ultra vires* lighterage business was actually managed, not by Eggleston, but by Mr. Ray Waters, an employee of Eggleston's Towing Company.

In appellant's fifth assignment of error, he contends that the trial court erred in failing to find that the charter by ARN of the barge "Takotna" to the joint venture was either void or voidable in so far as ATS was concerned. Without passing on the question of whether or not the trial court even had the power to adjudicate the rights and liabilities of a party not before it (ARN is not a party to this action), we hold that appellant's contention cannot be entertained for the reason that appellant proposed no finding of fact regarding the "Takotna" charter in the trial court.

Appellant, in assignment of error No. 6, sets forth a total of nine alleged errors by the trial court in allocating

costs and disbursements between the lighterage operation and the river freight operation. Only with respect to one of these nine items are we in accord with appellant's position. This item involves the allocation by the trial court of seventeen and one half per cent (amounting to $10,455) of the gross revenue derived from the Morrison-Knudsen Company *river freight business* to the lighterage account. Despite the fact that the unauthorized lighterage operation may have proved financially beneficial to the river freight operation, respondent Eggleston, by entering into the lighterage business, breached a fiduciary duty owed to ATS. In accord with the strict rule of fiduciary accountability enumerated and explained in the *Guth* case, *supra,* respondent Eggleston is not entitled to benefit in any way from his unauthorized act or acts. By allocating to the lighterage operation a part of the river freight revenue, however small, and despite Eggleston's perhaps admirable motives, the lighterage loss was thereby reduced. As the trial court very properly ordered that respondent Eggleston reimburse ATS for this loss, Eggleston in a real sense benefited from this allocation; it reduced the lighterage loss, and thereby reduced the amount Eggleston was required to pay to ATS. In short, respondent was allowed to benefit in an indirect way from his own wrongdoing. The decree of the trial court must, therefore, be modified so as to increase the amount respondent is obligated to pay to ATS by the sum of $5,227.50, thus increasing the total amount which Eggleston is required to pay to ATS to the sum of $18,229.37 (one half of the total loss sustained by the lighterage operation in the year 1956).

In his seventh assignment of error, appellant calls our attention to the fact that the report of the special referee did not include any reference to the books of account of either respondent or Eggleston Towing Company which were required by the trial court's interlocutory order of reference to be audited.

Appellant's counsel did not object to the trial court's receiving and considering the report in its present form

because (as they say) respondent was not required by the trial court to disgorge wrongfully obtained revenues. In his brief, appellant states his position as follows:

"However, if this Court concludes on the basis of this appeal that Eggleston should be held accountable to his principal, ATS, for net profit and revenues wrongfully obtained by breach of his fiduciary obligations, then it will be absolutely necessary that the special referee complete its audit by a thorough and complete examination of the books and records of Eggleston Towing Co. and Harlan J. and Clover Eggleston."

The record shows that on June 23, 1958 (which was about eight months prior to entry of the final decree), the parties stipulated that the duties of the special referee should be terminated (until further order of the court) as soon as its report of its investigation and audit of the 1956 season had been concluded and submitted.

In view of the conclusion which we have reached as to the extent of respondent Eggleston's liability to ATS, we can find no purpose to be served by further investigation and audit.

■■ The final assignment of error (No. 8) relates to the question of whether or not appellant is entitled to recover from ATS his costs and disbursements, including attorneys' fees incurred in the prosecution of this action. It has long been recognized that it is within the court's discretion in stockholder derivative actions to award such expenses to successful plaintiffs. But to warrant such an allowance, the action must be prosecuted, not only nominally, but actually in the corporation's behalf. See *Boothe v. Summit Coal Mining Co.,* 72 Wash. 679, 131 Pac. 252 (1913); *Edmiston v. Empire Ice & Shingle Co.,* 147 Wash. 490, 266 Pac. 703 (1928); *Tefft v. Schaeffer,* 136 Wash. 302, 239 Pac. 837, 1119 (1925). In this case, appellant alone reaped the benefits of this action, and there was no abuse of discretion in the trial court's refusal to allow him to recover attorneys' fees and other expenses (other than taxable costs).

One case which appellant discusses at length in his brief

is that of *Kane v. Klos,* 50 Wn. (2d) 778, 314 P. (2d) 672 (1957), attempting to analogize it to the case at bar. That case was one in which the president of a corporation fraudulantly induced an elderly stockholder to purchase from him a building at a price far in excess of the amount the president had actually paid the vendor thereof. The profits thus obtained were then used to pay for voting stock which the president issued to himself and to his wife without notice to the directors or stockholders. This court, in the *Kane* case, described the corporate officer as nothing less than a "swindler" and stated that "The evidence of secret profit . . . [was] so clear that the matter . . . [was] free from doubt." The court went on to hold that the faithless fiduciary must disgorge his ill-gotten gains—a principle with which we continue to be in full accord.

The facts in the case at bar are far different. In no manner of speaking can we characterize respondent as a swindler, nor did the trial court find evidence (clear or otherwise) of secret profit. What the trial court did find was that respondent Eggleston breached his fiduciary obligation owed to ATS in two respects—(1) by committing ATS to the lighterage operation, and (2) by chartering his own equipment to the joint venture. In our view, ATS has been made whole by the decree of the trial court as modified herein regarding the losses it sustained by virtue of respondent Eggleston's conduct. Obviously, no court can require a fiduciary to disgorge ill-gotten gains unless and until such gains are proved to exist.

The judgment of the trial court is hereby modified by increasing the amount thereof to $18,229.37, and, as so modified, it is affirmed. Each party shall pay his own costs on this appeal.

WEAVER, C. J., MALLERY, OTT, and HUNTER, JJ., concur.