155 So.2d 568 (1963)
Lee E. KOPLIN and Carol L. Koplin, his wife, Appellants,
v.
Julian BENNETT, Appellee.
No. E-103.
District Court of Appeal of Florida. First District.
August 6, 1963.
*569 Davenport, Johnston, Harris & Urquhart, Panama City, for appellants.
Logue & Bennett, Panama City, for appellee.
STURGIS, Chief Judge.
The appellee, Julian Bennett, brought this suit against the appellants, Mr. and Mrs. Lee E. Koplin, for specific performance of an alleged agreement whereby appellants gave appellee an option to purchase certain real property.
Upon denial of their motion to dismiss the complaint for failure to state a cause of action, the defendant-appellants filed an answer admitting that they executed the alleged agreement and denying that plaintiff-appellee complied therewith. They also alleged that plaintiff did not tender or deliver to them an assignment of a certain *570 mortgage as required by the agreement, did not tender to them the amount of money in cash as required by the agreement, gave no lawful consideration for said agreement, and induced them to execute the same by false and misleading representations as to the use to which the property was to be put in the event of the exercise of the option to purchase.
Depositions were taken of the plaintiff, of defendant Lee E. Koplin, and of one William M. Parker, a real estate salesman. Plaintiff then moved for summary judgment on the ground that the pleadings, depositions and admissions, together with an accompanying affidavit, showed there was no genuine issue as to any material fact and that plaintiff was entitled to judgment as a matter of law. A final decree was entered granting said motion and requiring defendants to convey the subject property to plaintiff in accordance with the provisions of the decree which conform, generally, to the terms and conditions of the alleged agreement, hence this appeal.
The sole point for determination is whether or not it was error to enter summary judgment. As a corollary thereto the question arises as to whether, assuming the alleged agreement was not supported by a lawful consideration, it nevertheless constituted an offer on the part of defendants to sell the property to plaintiff in accordance with its terms; and assuming it had the latter effect, the further question arises as to whether the plaintiff, prior to any withdrawal of the offer, accepted it in manner and form entitling him to specific performance.
It is axiomatic, of course, that summary judgment should not be granted if there exists any controverted issue of material fact, and that all inferences of fact deductible from the proofs must be drawn against the movant and in favor of the adverse party. Harrison v. McCourtney, 148 So.2d 53 (Fla.App. 1962); Card v. Commercial Bank, 119 So.2d 404 (Fla.App. 1960); Majeske v. Palm Beach Kennel Club, 117 So.2d 531 (Fla.App. 1959). It is also fundamental that when depositions or affidavits in support of a motion for summary judgment suggest factual conflicts or present a situation on which a finder of fact might properly draw varied conclusions from the record presented, summary judgment may not be granted. Lewis v. Tyner, 125 So.2d 328 (Fla. 1960); Fla. R.C.P. 1.36(c), 30 F.S.A.
The proofs on the motion for summary judgment fairly reflect that a prior option to purchase between the same parties and involving the same property had expired according to its own limitations; that plaintiff, acting by and through his agent, William M. Parker, a real estate broker or salesman who had represented him and others as broker in a sale of the subject property to defendants, negotiated with defendants the "agreement" in question on this appeal; that plaintiff had no contact whatever with defendants in procuring the alleged agreement dated June 20, 1961; and that Parker was not an agent of defendants in the premises. The "agreement" recites a consideration of $10.00 paid by plaintiff to defendants for an option to purchase the subject property in accordance with the terms and conditions therein stated. It provided that if the option is not exercised and the conditions of the agreement fully performed by the plaintiff, and written notice of such exercise and performance given to defendants on or before June 20, 1962, the "privilege [to purchase] shall thereupon wholly cease."
The deposition of plaintiff's agent, Mr. Parker, reflects that no consideration was given to support the alleged agreement. He specifically stated that no sum of money passed to defendants in the premises, as recited by the instrument, and upon being examined by counsel for plaintiff, the following colloquy occurred:
"Q. A while ago, you answered a question in regard to the consideration for the option, or the options given to the Bennetts, and *571 you said there was no consideration, to your knowledge. Earlier in your testimony you testified that the whole crux of this agreement was that there would be no sale unless there was an option?
"A. I was speaking in forms of currency.
"Q. Currency.
"A. I presume that that is what Mr. Davenport [counsel for defendants] was referring to."
He then testified that the purpose of negotiating the alleged agreement was to provide him with a longer period to purchase the property than was available under the former option agreement. Contrary to the general import of the deposition of defendant Lee E. Koplin, plaintiff stated that it was not the purpose of the "option agreement" to put himself in position to trade the subject property for property which he was interested in procuring from the county or government. He emphasized that he had no personal contact with defendants in the premises until the night prior to the date the alleged option was due to expire, at which time he had transactions with them upon which he relies as constituting an exercise of the alleged option to purchase. In referring to his dealings with his agent, the real estate dealer, plaintiff stated: "* * * I thought I made it clear to Mr. Parker, although I was very definitely telling him what I wanted to do with the land * * * that this option contract was not to swing on the government's assent to the exchange." And again: "* * * I never did mean to leave the impression with Mr. Parker that the whole option contract was to swing on a final answer on that, because you know in politics, things are never final. Administrations change, etc."
Upon being asked what consideration he gave for the alleged option agreement in suit, plaintiff stated, in substance, that when he and his mother sold the subject property to the defendants there was a problem concerning the use indiscriminately by the public of an area in front of the Reef Motel, the motel being separate property in which plaintiff has an interest; and he stated cryptically that there is a triangular parcel just west of the motel "which was to be the subject of a proposed exchange," thus lending credence to defendants' contention that at some point along the way a swap or exchange of the subject property was in the offing or contemplated by plaintiff. In responding to a question regarding the consideration for the alleged contract the plaintiff said:
"And when you asked the consideration for this contract  the option contract, * * *  the sole consideration for this option contract, at least the paramount consideration was that my mother was completely totally unwilling to sell her 1/6th interest in this land * * * and I agreed with her, unless we had back from * * * Mr. Koplin, an option on this parcel which is the subject of this suit, so that we could set up, or hope to set up an exchange to protect ourselves * * * [against] the integration of the waterfront property right in front of the motel. You know, we own the motel now." (Emphasis added.)
Then followed questions and answers, viz:
"Q. Who knew about this consideration?
"A. Well, of course, my mother, and myself, and I think and hope that I made it clear to Mr. Parker that we didn't intend to sell to Mr. Koplin unless we had that option back. I think I made it very clear to him, because I told him that was the whole key as far as we were concerned to the whole subject. If we couldn't retain this parcel here that's the subject of this suit, we just weren't interested in selling what is now the Sky-Ride property.

*572 "Q. Now, this mortgage that your mother was to cancel. What property did it cover? [The reference here is to a mortgage given by defendants to plaintiff's mother.]
"A. It covered her, or represented her 1/6th interest in a $60,000.00 sale of the property involved in this litigation, as well as the large triangular piece on Section 34, lying north of US Highway 98, which is represented here. Both parcels.
"Q. But now, you never discussed this with Mr. Koplin?
"A. No, sir.
"Q. Nor did your mother discuss it with Mr. Koplin?
"A. No. Parker, as I say again, was the only man we discussed it with, prior to the night I selected to exercise my option.
"Q. So actually, as far as you know, there was no consideration for this option for one year?
"A. Well 
"Q. As far as Mr. Koplin was concerned?
"A. As far as Mr. Koplin was concerned, Bert, I don't know how much value he placed on his Sky-Ride development, but he was  as far as we were concerned, wouldn't be there today if we hadn't gotten that option. We would have never signed the deed. He might have gotten it by the other heirs partitioning and selling, but that would have involved a suit between people who have known each other for 46 years, and I don't know that they would have done it. I can assure you that he would not be sitting there with that million dollar development today if he hadn't given us back that option."
A binding option contract requires a valuable consideration to support it; otherwise it is considered as a mere offer which may be withdrawn at any time before acceptance. Donahue v. Davis, 68 So.2d 163, 170 (Fla. 1953); Willis v. Van Woy, 155 Fla. 465, 20 So.2d 690. Indulging all reasonable inferences of fact in favor of appellants, the proofs support the premise that by the instrument dated June 20, 1961, defendants made only a gratuitous promise to sell land to plaintiff at plaintiff's option if exercised in accordance with the terms and conditions stated therein, and as a matter of law they were entitled to withdraw it at any time before acceptance.
Construing the proofs before the chancellor on the motion for summary judgment in the light most favorable to the appellant-defendants, it is apparent (1) that the alleged agreement is not supported by any lawful consideration; (2) that a genuine issue of fact exists with respect to whether there was a valid acceptance of a subsisting offer on the part of defendants to convey to plaintiff the subject property; and (3), assuming it is determined that the plaintiff made a bona fide inadequate but curable attempt to accept a subsisting offer of defendants to sell, a genuine issue of fact exists with respect to whether defendants waived strict compliance with the terms of the offer and thereby, as a matter of law, afforded plaintiff a reasonable opportunity to cure the defective acceptance.
A review of the decisions of our Supreme Court and of the District Court of Appeal, Second District,[1] cited by plaintiff-appellee *573 in support of his contention that the proofs unqualifiedly show acceptance of the offer contained in the alleged "option agreement" or offer to convey, reveals that they do not involve summary judgment proceedings and that the conclusion in each case is based on the facts and circumstances pertinent thereto, including a readiness and willingness, accompanied by an ability on the part of the party seeking the relief, to do the acts which the agreement required him to perform, provided the other concurrently does the things he is required by it to do, and a notice is given by the former to the latter of such readiness. We find no rule of law to the effect that the optionee, by serving on optionor an inadequate notice of election to exercise the option, casts on the optionor any duty to instruct or inform the optionee of the particulars in which the election to exercise the option fails to meet the terms and conditions thereof; nor do we find that under such circumstances the optionor is required to take any affirmative action on the theory that the optionee will amend or correct an inadequate acceptance.
The proofs are unequivocal to the effect that the alleged agreement was not supported by any lawful consideration. The right to specific performance depends, therefore, on the answer to controverted questions of fact that are premised on the assumption that the instrument in question constituted a continuing offer of the defendants to sell to plaintiff on the terms and conditions stated therein. These questions are: First, whether the plaintiff accepted such offer in manner and form agreeable to its terms and conditions; secondly, assuming that plaintiff made a bona fide but legally insufficient attempt to accept such offer, the question then arises as to whether the defendants actually or impliedly waived strict compliance with the terms and conditions of the offer so as to be compelled to treat the acceptance as being in substantial compliance therewith. We here note that the acceptance of such offer, to result in a contract, must be absolute and unconditional, identical with the terms of the offer, and in the mode, at the place, and within the time expressly or impliedly required by the offer. Strong & Trowbridge Co. v. H. Baars & Co., 60 Fla. 253, 54 So. 92 (1910); Carr v. Duval, 14 Pet. 77, 10 L.Ed. 361 (U.S. 1840).
Having concluded that the proofs herein disclose controverted facts that are material to the issues in this cause, it was error to enter summary judgment for plaintiff, and so the judgment appealed must be and it is
Reversed.
WIGGINTON and RAWLS, JJ., concur.
NOTES
[1] Alvarez v. Hernandez, 104 So.2d 543 (Fla. 1958); Sisco v. Rotenberg, 104 So.2d 365 (Fla. 1958); Booth v. Bobbitt, 94 Fla. 704, 114 So. 513 (1927); Martin v. Albee, 93 Fla. 941, 113 So. 415 (1927); Shouse v. Doane, 39 Fla. 95, 21 So. 807 (1897).