[No. 209-40563-1. Division One. May 18, 1970. |
Panel 2

C. B. WILLIAMS, *Appellant and Cross-respondent,* v. QUEEN FISHERIES, INC., *et al., Respondents and Cross-appellants.*

*Malcolm L. Edwards,* for appellant and cross-respondent.

*Helsell, Paul, Fetterman, Todd & Hokanson, Richard S. White,* and *Gerald G. Day,* for respondents and cross-appellants.

UTTER, J.—A suit alleging breach of an employment contract was brought by C. B. Williams against Queen Fisheries, Inc. and its majority stockholder and president, E. H. Bendiksen. Queen denied liability and asked for the return of a $20,000 salary paid by them to Williams in 1966. They sought, as well, to require Williams to account to Queen for monies received by Williams and another employee, Frank Schucka, from their operation of a business known as Alaska Barge and Lighterage Service, and for return of sums paid Williams and Schucka for services rendered to AB&L[1]

In a trial to the court, the judge denied Williams' claim for damages and Queen's counterclaim for the 1966 wages. The court found the accounting by Williams of the earnings of AB&L accurate, entered judgment accordingly, denied Queen's request for prejudgment interest on the money earned by AB&L belonging to it and also denied Queen's request for the return of money paid to Williams and Schucka.

Williams appeals and Queen cross-appeals from the judgment of the trial court.

Queen was in financial trouble in April, 1964. Bendiksen transferred all his voting rights in Queen to Williams in April of 1964 at the request of Queen's creditors, and until such time as the creditors were satisfied. New members

---

[1]The parties will be referred to as Williams, Queen, Bendiksen and Schucka. Alaska Barge and Lighterage Service will be AB&L.

were then added to Queen's Board of Directors at Williams' instigation, giving him effective control on December 15, 1965. A meeting of the new board was held in December, 1965, and a resolution adopted stating Williams was employed for 3 years as president and general manager of Queen at a minimum salary of $20,000 a year.

In the spring of 1966, Williams managed Queen's business and, in addition, was contacted about lighterage work in the area of Queen's Alaska cannery by Alaska Steamship Co.

Although Williams' position at the time of trial was that AB&L at all times belonged to Queen and that his acts were for Queen's benefit, the trial court entered findings that in early 1966 Williams agreed with Alaska Steamship Co. to enter into the lighterage business using Queen's equipment and employees; operated this service under his name; represented himself to be the owner; at all times considered AB&L to be his personal business although he planned to turn the net profits over to Queen; and that Williams planned to continue in lighterage business after leaving Queen with Schucka, the captain of a boat owned by Queen called the "Erling Jr." Williams agreed to pay Schucka 10 per cent of the gross income of AB&L for the 1966 season.

In September of 1966 Williams wrote a check for $1,000 on the account of AB&L as a down payment on a boat to be purchased by Williams and Schucka and used in their lighterage business. The purchase was not completed. On November 7, 1966, Bendiksen notified Williams that he had satisfied the creditors and demanded return of the control of Queen to him. On November 10th a written request for Williams' resignation was made and on that date Williams was notified he was no longer an officer and director of Queen and as of that date had been relieved of all management responsibilities.

On November 11th Williams wrote himself a check for $2,000 on the AB&L service account and on November 14th also had a check written for another $1,000 to Schucka on

the AB&L account. Williams. was informed on December 14, 1966, that his employment with Queen was terminated effective December 31, 1966, and on December 31st Williams wrote two checks on the AB&L service account; one to Schucka for $2,096.85 and the other to himself for $182.57. The trial court specifically found Williams had no authority to write checks or otherwise deal with Queen's assets on November 14th or December 31st and that he was aware he had no such authority.

The trial court entered what is termed a finding of fact but is in reality a conclusion of law that Williams was, as voting trustee, director, president and general manager of Queen, a fiduciary for the corporation, and that in his dealing with AB&L as his own business, breached his fiduciary duties. The court concluded the breach of. these fiduciary duties constituted good cause for his discharge by Queen but also found that Williams did not act in bad faith in his dealings with AB&L.

█ A corporate officer is an agent for his corporate principal. Corporate officers and directors occupy a fiduciary relationship to a private corporation and shareholders thereof akin to that of a trustee, and owe undivided loyalty and a standard of behavior above that of the workaday world. *State ex rel. Hayes Oyster Co. v. Keypoint Oyster Co.*, 64 Wn.2d 375, 381, 391 P.2d 979 (1964), and cases cited therein.

A principal may not rightfully terminate the agency relationship before the end of the period for which he has agreed to employ the agent, unless the agent has committed a material breach of contract or has failed to perform a condition. A serious violation of the duty of loyalty constitutes an entire breach of contract, justifying discharge of the agent. A willful violation of the duty of loyalty may constitute a material breach of the contract, even though the harm likely to arise from such breach is very small. Restatement (Second) of Agency § 409 (1958). The duty of loyalty is one of the elements of the fiduciary duty, and in discussing a trustee's duty of loyalty which is synonymous

to that duty owed a principal by his agent, G. Bogert, Trusts & Trustees, § 543 (2d ed. 1960) states at 475:

Reasons behind the establishment of the loyalty rule by equity are that it is generally, if not always, humanly impossible for the same person to act fairly in two capacities and on behalf of two interests in the same transaction. Consciously or unconsciously he will favor one side as against the other, where there is or may be a conflict of interest. If one of the interests involved is that of the trustee personally, selfishness is apt to lead him to give himself an advantage. If permitted to represent antagonistic interests the trustee is placed under temptation and is apt in many cases to yield to the natural prompting to give himself the benefit of all doubts, or to make decisions which favor the third person who is competing with the beneficiary.

. . .

In its desire to guard the highly valuable fiduciary relationships against improper administration, the court deems it better to forbid disloyalty and strike down all disloyal acts, rather than to attempt to separate the harmless and the harmful by permitting the trustee to justify his representation of two interests.

The fiduciary obligation may be breached, although no corruption, dishonesty or bad faith is involved. The standard of duty required is for the agent to avoid placing himself in a situation where he may be tempted by his own private interests to disregard that of his principal and it is this corrupting tendency the law condemns. *Production Mach. Co. v. Howe*, 327 Mass. 372, 99 N.E.2d 32 (1951); *Little v. Phipps*, 208 Mass. 331, 94 N.E. 260 (1911); *State ex rel. Hayes Oyster Co. v. Keypoint Oyster Co., supra.*

The use of Queen's equipment, employees, its credit and monies to establish a personal business, placed Williams in just such a position as that condemned by the courts, and the trial court's conclusion that there was a breach of fiduciary relationship is warranted by the facts. The breach of the fiduciary relationship constituted good cause for his discharge by Queen and there is no liability to Queen on the contract of employment. Inasmuch as the trial court's findings support the discharge of Williams, the alternate

theories propounded by Queen to justify Williams' discharge will not be discussed.

In ruling on Queen's claim for return of Williams' salary for 1966, the basic question is whether and under what circumstances the court may exercise its discretion in allowing compensation for a corporate officer who has breached his duty of loyalty. *State ex rel. Hayes Oyster Co. v. Keypoint Oyster Co., supra.* The Restatement (Second) of Trusts and Agency contain several sections on this subject.[2]

 The Washington cases have applied the standards

[2]Restatement (Second) of Trusts § 242 (1959): "If the trustee commits a breach of trust, the court may in its discretion deny him all compensation or allow him a reduced compensation or allow him full compensation."

Subsection *c* of § 243 provides: "It is within the discretion of the court whether the trustee who has committed a breach of trust shall receive full compensation or whether his compensation shall be reduced or denied. In the exercise of the court's discretion the following factors are considered: (1) whether the trustee acted in good faith or not; (2) whether the breach of trust was intentional or negligent or without fault; (3) whether the breach of trust related to the management of the whole trust or related only to a part of the trust property; (4) whether or not the breach of trust occasioned any loss and whether if there has been a loss it has been made good by the trustee; (5) whether the trustee's services were of value to the trust."

Subsection *d* of § 243 provides: "If the trustee repudiates the trust or misappropriates the trust property or if he intentionally or negligently mismanages the whole trust, he will ordinarily be allowed no compensation."

Restatement (Second) of Agency § 456 (1958): "If a principal properly discharges an agent for breach of contract, or the agent wrongfully renounces the employment, the principal is subject to liability to pay to the agent, with the deduction for the loss caused the principal by the breach of contract:

(a) the agreed compensation for services properly rendered for which the compensation is apportioned in the contract, whether or not the agent's breach is wilful and deliberate; and

(b) the value, not exceeding the agreed ratable compensation, of services properly rendered for which the compensation is not apportioned if, but only if, the agent's breach is not wilful and deliberate."

Section 469 states: "An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a wilful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned."

advocated by both the Restatement (Second) of Agency and Trusts (n.2) to corporate officers. The Restatement (Second) of Agency standard is mentioned specifically and is applied in *Kane v. Klos,* 50 Wn.2d 778, 314 P.2d 672 (1957). The language from *Kane* is quoted in the cases of *Rushing v. Stephanus,* 64 Wn.2d 607, 393 P.2d 281 (1964) and *Farrell v. Score,* 67 Wn.2d 957, 411 P.2d 146 (1966), although these do not involve corporate officers.

A position similar to that taken by the Restatement (Second) of Trusts § 243 was applied in *Leppaluoto v. Eggleston,* 57 Wn.2d 393, 357 P.2d 725 (1960). There the court was confronted with a claim that a corporate officer should return all or a portion of a salary for a claimed breach of his fiduciary relationship, the contention being that he spent much of his time in personal endeavors. The court stated at page 405:

> This presents a question of fact, to wit: Did Eggleston satisfactorily perform his duties as general manager of the joint venture, the job for which he was to be paid by ATS? That Eggleston, in one or more ways, breached a fiduciary obligation to his principal is not conclusive proof that he, in fact, failed to earn his salary.

The court examined the reasoning behind the provisions in the Restatement (Second) of Trusts and Agency (n.2) in *Lydia E. Pinkham Medicine Co. v. Gove,* 303 Mass. 1, 20 N.E.2d 482, 486 (1939), and stated:

> A trustee who commits a breach of trust or an agent who is guilty of disloyal conduct thereby imperils his right to compensation. [Citations omitted.] There are cases in which this principle has been applied to deny all salary to officers of corporations whose official acts have been tainted with bad faith. [Citations omitted.] . . . But the rule is not an inflexible one. Each case must be determined in the discretion of the court with reference to the peculiar factors found to be present. Although pure considerations of public policy have no doubt weighed heavily against fiduciaries who have placed selfish interest above duty, yet the American Law Institute finds the basis for refusal of compensation to a trustee, not in the theory of a penalty, but in the theory that payment is not due for services not properly per-

formed. Am. Law Inst. Restatement: Trusts, § 243, Comment a. Apparently upon similar reasoning, a disloyal agent may have compensation which is "apportioned" by the contract of employment to services properly performed. Am. Law Inst. Restatement: Agency, §§ 456, 469.

It is true as a general proposition that an agent or other fiduciary who is unfaithful to his trust may be denied compensation, but it is not an inflexible rule and generally rests with the discretion of the court. *Willis v. Van Woy*, 155 Fla. 465, 20 So. 2d 690 (1945); *Shulkin v. Shulkin*, 301 Mass. 184, 16 N.E.2d 644, 118 A.L.R. 629 (1938); *Marnon v. Vaughan Motor Co.*, 184 Ore. 103, 194 P.2d 992, 1020 (1948).[3]

Restatement (Second) of Agency § 469 (1958) does not stand for a contrary proposition. The word "entitle" used in section 469 is defined to mean "To give a right to." 1 J. Bouvier's Law Dictionary 1044 (8th ed. 1914). A reading of section 469, in light of this definition, would indicate a disloyal agent does not have a *right* to compensation by virtue of a breach of his duty of loyalty, but a breach does not exclude the exercise of the court's discretion granting him compensation. Subparagraph *b.* of section 469 elaborates on the previous one and indicates if the breach is extreme, that is, *willful and deliberate*, the agent is not entitled, as a matter of right, to compensation even for services which may have

---

[3]Although the court applies the forfeiture of compensation rule in the sense of a penalty in *Kane,* this holding appears to be modified by the later ruling in *Leppaluoto. Rushing* involved a situation where the court exercised its discretion in disallowing compensation for properly performed services to an agent guilty of fraud and breach of fiduciary duty. *Farrell* involved an action where a real estate agent, while occupying the position of a fiduciary, committed acts of actionable fraud against his principal. Due to his fraudulent representations, rescission of a previously executed contract of sale became necessary. The court held that conduct precluded him from retaining the fruits of his endeavors and relied on *Mattieligh v. Poe,* 57 Wn.2d 203, 205, 356 P.2d 328 (1960). There the court stated that where, because of fraud, a real estate broker caused recission of a sale negotiated by him, one of the items of the principal's damage is the commission paid. Although the court then went on to quote from and comment on *Kane,* in light of its reliance on *Mattieligh,* this would not appear to have been necessary to the holding in the case.

been *properly* performed if no compensation has been apportioned for those services.

We find no abuse of discretion in allowing Williams to retain his salary for 1966. The court, under the rule promulgated by *Leppaluoto* and Restatement (Second) of Trusts § 243, could be said to have properly exercised its discretion in allowing Williams to retain his salary. If a strict interpretation of the standard set forth in Restatement (Second) of Agency § 456 is followed, the salary paid Williams in 1966 could be said to be for services for which the compensation was apportioned in his contract of employment.

■ Williams assigns as error the ruling of the court that certain matters were not relevant or material. Questions of relevancy and materiality of evidence are ordinarily within the discretion of the trial judge. *State v. Whalon,* 1 Wn. App. 785, 791, 464 P.2d 730 (1970); *State v. Birch,* 183 Wash. 670, 49 P.2d 921 (1935). We have examined the record and find no abuse of discretion.

Queen seeks to recover from Williams and Schucka those sums paid to them as compensation for additional services they performed. Schucka was found to have rendered additional services in connection with the lighterage operation. He was paid a fixed salary by Queen for all the time he was engaged in the lighterage work, but the lighterage activity substantially increased his responsibility inasmuch as he had the supervisory obligation for the entire lighterage work.

Williams performed additional services in collecting accounts after January 1, 1967. Although Williams indicated on his income tax return that the $2,000 he paid himself was for services rendered in 1966, there was testimony that he collected some $3,600 for AB&L from delinquent accounts in 1967 and also prepared an accounting for AB&L which was completed August 29, 1967. The trial court specifically found these sums paid Williams and Schucka to be reasonable payment.

■ In *Lloyd v. Ridgefield Lumber Ass'n, Inc.,* 38 Wn.2d 723, 735, 231 P.2d 613 (1951), our court, quoting from 43

Words & Phrases 528 defined "unjust enrichment" as follows:

"A person is unjustly enriched if the retention of the benefit would be unjust. Restatement, Restitution, § 1 a.

"Doctrine of 'unjust enrichment' is that [a] person shall not be allowed to profit or enrich himself inequitably at another's expense. [Citation omitted.]"

The doctrine has been applied by the Washington courts in a variety of situations. See discussion in *Golob v. George S. May Int'l Co.*, 2 Wn. App. 499, 468 P.2d 707 (1970), and cases noted.

Schucka rendered services which benefited AB&L. AB&L was found to belong to Queen and they accepted a sum in excess of $25,000 as the profit from Williams' and Schucka's efforts. Queen, having benefited from Schucka's services, is required to pay a reasonable compensation for them. We agree Schucka should be allowed to retain the $3,096.85.

The doctrine of unjust enrichment also entitles Williams to retain the money now claimed by Queen. Restatement (Second) Agency § 451 (1958) provides:

Unless otherwise agreed, upon termination of the agency relation, whether or not in breach of contract by either party, the principal has no duty to compensate the agent for subsequent services or to indemnify him for obligations subsequently assumed, unless otherwise the principal would be unjustly enriched.

Williams' services in collecting the accounts for AB&L in 1967 inured to the benefit of Queen, as AB&L was found to be the property of Queen. As discussed above in relation to Schucka, to allow Queen now to claim and retain the benefits of these services without paying reasonable compensation for them, would be to allow Queen to be unjustly enriched at the expense of Williams.

Support for this conclusion is also derived from the Restatement of Restitution § 40 (1937):

A person who has rendered services to another or services which have inured to the benefit of another or who has affixed chattels to the land or chattels of another is

entitled to restitution therefor if the services were rendered or the chattels were affixed:

. . .

 (c) in the mistaken belief, of which the other knew or had reason to know, that the services would inure to the benefit of the one giving them or of a third person, or that the other promised to pay for them, or

There were facts in the record which indicated Williams believed AB&L was his own business and that in late 1966 Queen became aware Williams operated AB&L as his separate business. Queen could be said to have had reason to know Williams would perform the normal services incident to his role as owner of that business subsequent to November, 1966, even though Queen claimed ownership of AB&L. They took no steps to advise Williams he should not do any further work after their discovery of AB&L's existence. These facts bring the circumstances of this case within the rule stated in the Restatement of Restitution § 40.

The sums paid Williams were specifically found to be a reasonable reward for the services performed in collecting the accounts. Queen is required to pay for the reasonable value of these services.

Queen's counterclaim asked the court to require Williams to account to Queen for all monies received by plaintiff out of the business of AB&L and for judgment against Williams for any amount determined to be owing by plaintiff in such accounting.

The accounting performed by Williams and accepted by the parties at the time of trial showed a profit of AB&L of $25,027.85 in cash plus certain accounts receivable. The trial court found Queen was entitled to possession of the cash and the accounts receivable of the lighterage operation no later than December 31, 1966. Based on this finding, Queen asks interest from December 31, 1966.

■ The determination of what the final accounts of AB&L were required the exercise of discretion. Williams had to compromise, pay and satisfy claims to shippers arising out of the lighterage activity subsequent to December

31, 1966. Although the parties agreed on the final amounts established by Williams' accounting, after the accounts were settled, the establishment of the final sum due required the parties to exercise their discretion in agreeing upon the correctness of Williams' actions and his final figures reached as a result of these actions.

The standard of determination as to whether interest is allowable is set out in *Mall Tool Co. v. Farwest Equip. Co.*, 45 Wn.2d 158, 273 P.2d 652 (1954). There, citing C. Mc-Cormick, Damages 213, § 54 (1935), the court stated:

"A claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness without reliance upon opinion or discretion.

The necessity for Williams to exercise his discretion removes this case from that category of claims classified as liquidated by our court in *Mall Tool Co.*, and the trial court properly denied interest from December 31, 1966.

The judgment of the trial court is affirmed.

HOROWITZ, A. C. J., and WILLIAMS, J., concur.