## MAULE INDUSTRIES, Inc. v. ROSENTHAL, et al.

No. 68-7413.

Circuit Court, Broward County.

July 10, 1970.

Robert E. Ziegler of Rogers, Morris & Ziegler, Fort Lauderdale, for the plaintiff.

T. Paul Hodge of Sandstrom & Hodge, Fort Lauderdale, for the defendants.

LAMAR WARREN, Circuit Judge.

This is an action for specific performance wherein plaintiff seeks to require defendants to grant and convey to plaintiff title to certain real estate.

By paragraph 15 of both of two leases, dated October 31, 1962, for a term of six years from date, in both of which plaintiff was the lessee, and in one of which Manuel Rosenthal and Sofia Rosenthal, his wife, were the lessors and in the other Barry E. Rosenthal and Carol Ann Rosenthal (brother and sister) were the lessors, an option to purchase for $104,000 was provided, which option included the following language —

> "This option may be exercised by Lessee, by giving written notice of said election to the Lessors within thirty (30) days after, any anniversary date of this instrument; that is to say, during the months of October or November of any successive year during the term.".

After certain admissions and denials, defendants' answers set forth affirmative defenses, to wit, the option was not exercised under the terms and as contemplated in the contract, the option

was not timely exercised, and the defendants Barry E. and Carol Ann were not given notice as required by the contract.

Although Manuel and Sofia gave one of the leases, some months prior to the execution of the leases, title had been placed in the children, Barry and Carol Ann, hence, the giving of the second lease by the children.

On October 8, 1968, plaintiff directed a letter to Mr. and Mrs. Manuel Rosenthal, in which it was stated —

> "Under a Lease and Option to purchase Agreement between you and Maule Industries, Inc. dated the 31st day of October, 1962, Maule Industries, Inc. was given the option to purchase the property which we refer to as Maule's Broward Ready-Mix property. Maule Industries, Inc. does herewith give you official notice that we plan to exercise our option to purchase under the terms of Paragraph 15, Page 5, of said Lease and Option to Purchase Agreement."

No similar written notice was given to the children, who held the title and who had given a lease to plaintiff. In plaintiff's answers to interrogatories, however, it was stated that the above letter "was the first in a series of letters and telephone calls with reference to the exercise of this option. After this letter was written, there were various exchanges in this regard between A. C. Paoli, Esq., as the attorney representing the owners of this property and Maule Industries, Inc. and its attorneys." In further answers, plaintiff stated, "Written notice of plaintiff exercising the option to purchase, was given by mail to the office where the rental payments were customarily made and to the lessors' attorney"; and "the plaintiff contends that notice was not necessary because the word 'may' in paragraph 15 of the lease should be interpreted as permissive and not mandatory, based upon this interpretation, notice would not be necessary." In response to an interrogatory questioning whether plaintiff claimed Barry or someone on his behalf waived the notice, and whether such waiver was in writing or oral, plaintiff answered, "In writing and orally," by "his attorney A. C. Paoli," who (Mr. Paoli) "stated to Fritz Gibson of Maule Industries, Inc. that he represented Barry and Carol Rosenthal and that although Maule Industries, Inc. had failed to exercise the option in time, his clients had directed him to submit an offer to sell the said property to Maule Industries, Inc., for $158,000."

In his deposition (PX5), Mr. Paoli testified he had been acquainted with the Rosenthal family in a professional capacity for better than ten years, and that his brother represented them in the consummation of the leases which were prepared by lessee's

attorneys. When he wrote the letter of October 16, 1968 (PX3B), it was pursuant to instructions of Mrs. Manuel Rosenthal, because Mr. Rosenthal had been incapacitated. The letter of October 8, 1968 (PX3A) was given him by Mrs. Rosenthal.

When asked if when he wrote the letter of October 23, 1968 (PX3D) he was representing Barry and Carol, the children, he said, "I can't say in all sincerity that I represented Barry and Carol . . . because my dealings were with Mr. and Mrs. Rosenthal." When asked if he conferred with Barry regarding the option, he answered, "I have conferred with him." When asked when was the first conference with Barry as to the lease, he replied, "Prior to the date of the letter [PX3D], but I can't tell you exactly when. It necessarily wouldn't have to be in the office. It could have been on the telephone." Upon being asked if it would have been between October 8, 1968 and October 23, 1968, he answered, "Yes. As I say, I'm only assuming. I honestly don't know." He did not know if there was a second conference, not on that particular item.

His recollection of his conversation with Mr. Gibson was that he inquired, "Well, how much do they want to sell the property for?" He didn't know whether he wrote or gave him a figure; he couldn't say whether he received the figure from Barry or from Mr. and Mrs. Rosenthal. It was at Gibson's request that the witness discussed selling the property to Maule as an entirely different sale, Gibson asking, "Do they want to sell it?" Mr. Paoli felt the lease had expired; they hadn't exercised their option in time and therefore the lease and their option privilege had been cancelled. He believed he told Gibson, "I think they would, but certainly not on their terms." He didn't remember whether he got the price from his client, that is, Barry or his family; and Gibson said he would take it up with his board of directors. As to whether when he wrote Gibson on November 14, 1968 (letter attached to Mr. Paoli's deposition) he was writing on behalf of Barry and Carol, he replied, "I believe in my dealings, all have been with — at this point have been with Mrs. Rosenthal, that is, Sophia Rosenthal," except that he remembered Barry coming in once, at least, that was his recollection; if there had been any other conversations with him concerning this, he believed it was by telephone. "As I say, I believe I gave them a price, and I don't recall whether I got it from my people or whether it was something that I got from conversations with Barry as to value. I might have called Barry and asked him if they had an appraisal on the place or might have talked to Mrs. Rosenthal, I don't recall."

When Mrs. Rosenthal brought or mailed in the letter of October 8, 1968, she didn't tell him she was acting for Barry or Carol, but it seemed like it was a family affair. Whenever he had any infor-

mation he would call her, or if she hadn't heard from him, she would call him and inquire. Probably sometime in the latter part of November, 1968, was the last he heard about the matter, when "Mrs. Rosenthal told me to leave everything status quo, and that's the last time I had anything to do with it."

In Barry Rosenthal's deposition (PX6), he stated that he was vice-president of Broward Septic Tank Company; that his parents did not discuss with him the receipt of the letter of October 8, 1968, nor anyone else prior to suit. Although the letter was addressed to the address of the Broward Septic Tank Company, it would have been delivered to his parents by one of the men from the company or the bookkeeper, as was other mail that arrived there for them. He does not enter into business negotiations in his sister's behalf, had not discussed with her a purchase price for the subject property, nor had they discussed the possibility of selling it, only that they would have to wait and see how this came out before they could do anything.

At trial Barry Rosenthal testified he did not authorize Mr. Paoli to enter into negotiations in his behalf to sell to Maule, he did not discuss it with him; that Mr. Paoli had no authority to act for him or his sister. He further testified that during October, 1968, Mr. Paoli started trying to collect some accounts receivables for Broward Septic Tank Company; that he did not go to his office, but talked to him on the telephone about the accounts. During these conversations, Mr. Paoli did not mention that Maule had written the letter of Ocober 8, 1968 (PX3A). He never discussed with Mr. Paoli the lease he had with Maule, and the witness did not discuss it with his mother and father.

In the deposition of Mrs. Manuel Rosenthal (PX7), the witness stated that she did not show the letter (PX3A) to her son, didn't tell him anything about it, but she and Mr. Paoli discussed the possible sale of it; nor did she confer with her children before authorizing Mr. Paoli to submit a figure; she does not manage any of Barry's affairs for him. When she went to Mr. Paoli with the letter, she imagined she went on her children's behalf, but they weren't aware of it.

Carol Ann Rosenthal testified on her deposition (PX8), that she met Mr. Paoli one time when the lease was being negotiated, and had not talked with or corresponded with him since; that only her attorney, Mr. Hodge, had discussed the expiration of the lease with her; that her brother has been the active person in her behalf with regard to the lease; and that nobody informed her of Maule's notice that the purchase option was exercised.

The evidence showed that at the time plaintiff sent its letter of October 8, 1968, Carol Rosenthal was twenty-five years old and a

teacher in New York, and that Barry Rosenthal was twenty-eight, and operating his own business.

The correspondence passing between the parties consisted essentially of the letter of October 8, 1968 (PX3A), by which plaintiff attempted to exercise the option; the one of October 16, 1968 (PX3B), from Mr. Paoli apprising the plaintiff promptly that the notice was directed to the wrong persons; plaintiff's letter of October 21, 1968 (PX3C) inquiring about the existence of the lease given by Barry and Carol Rosenthal (although plaintiff had prepared the same), to which Mr. Paoli replied immediately on October 23, 1968 (PX3D); the letter of November 14, 1968 (PX3E), wherein plaintiff asked defendants' intentions, and on the same date Mr. Paoli inquiring (letter attached to his deposition) when he would hear from plaintiff; Mr. Paoli on November 18, 1968 (letter attached to his deposition) stating that theretofore Maule had agreed they had not exercised their option on time; the reply of November 20, 1968 (PX3E), with plaintiff rejecting the contention that the option was not properly or timely exercised and Mr. Paoli on November 26, 1968 (PX3F), reiterating his position.

Turning to plaintiff's point that written notice was not necessarily required, since the word "may" in the option, that is, "This option may be exercised by Lessee, by giving written notice . . . ," might be interpreted to be permissive instead of mandatory, the court finds that it was intended to be mandatory that the lessee should give written notice of the election to purchase the premises, it being the only method mentioned in the lease of exercising the option, and the manner of giving notice being set out in explicit detail in the same paragraph that contained the grant of the option. More importantly however the parties interpreted and treated the provision as mandatory — the plaintiff, who prepared the lease, by giving written notice, and the defendants by their response to the written notice. When the grant and the manner of exercise in paragraph 15 are read together, it seems clear to the court that a written notice was required. There was no evidence to the contrary.

Plaintiff's stronger contention though is that while its notice was not directed to the proper lessors of the property, the error was not important or fatal because the younger Rosenthals had notice and knowledge of plaintiff's letter, arising from an agency relationship and an attorney-client relationship between Mr. Paoli and the defendants.

The court finds from a careful review of the evidence above that the option was not properly exercised for failure to give notice to the proper lessors and owners of the property. The following cases were among those examined. Orlando Realty Board Bldg. Cor-

poration v. Hilbert, 113 So. 100; Howard Coal & Co. v. Williams, 27 So.2d 352; Mathews v. Kingsley, Fla., 100 So.2d 445; Koplin v. Bennett, Fla., 155 So.2d 568; Coastal Bay Golf Club, Inc. v. Holbein, Fla., 231 So.2d 854.

There was no satisfactory or substantial proof that either of the younger Rosenthals had knowledge of plaintiff's letter, or that Mr. Paoli was agent or attorney for them with reference to the lease, the supporting evidence being doubtful, inconclusive, and lacking in certainty or clarity; there was furthermore no sufficient inference or implication of agency from the facts of the case. It was shown that Mr. Paoli had acted over the years as attorney for the elder Rosenthals, however, they did not own the subject property, nor was there proven any right in them to act for the owners.

It is therefore ordered that plaintiff's complaint be and the same is hereby dismissed, costs to be later taxed.