Argued February 9, affirmed June 26, petition for rehearing
denied July 23, 1968

## OLSEN, *Appellant, v.* PRODUCERS LIFE
## INSURANCE COMPANY, *Respondent.*

443 P. 2d 172

*William B. Wyllie,* Salem, argued the cause for appellant. With him on the briefs were Rhoten, Rhoten & Speerstra, Salem.

*James H. Clarke,* Portland, argued the cause for respondent. With him on the brief were McColloch, Dezendorf & Spears and Herbert H. Anderson, Portland.

Before McALLISTER, Presiding Justice, and O'CONNELL and DENECKE, Justices.

DENECKE, J.

Plaintiff brought this suit for an accounting to determine the amount of renewal commissions owing him as compensation for working as a supervising agent or employee of the defendant. The trial court found that the plaintiff had unclean hands and, therefore, was not entitled to relief from a court of equity. Plaintiff appeals.

The plaintiff went to work for the defendant Producers Life Insurance Company in 1958 and worked under various employment contracts, all of which provided that the defendant would receive some percentage of the renewal premiums paid on business produced by agents working under plaintiff's supervision. Plaintiff's position was described variously as general agent, director of agencies, etc. In June 1964 plaintiff resigned from his postion with Producers. The plaintiff admits that in the week prior to his resignation he violated his contract with the defendant and committed disloyal acts which primarily consisted of attempts to persuade agents of Producers to leave Producers' employment and go to work for another company. The defendant contends this amounts to having unclean hands and terminates any right plaintiff had to renewal commissions.

One of the issues is whether the plaintiff is entitled to commissions on renewal premiums after he termi-

nated his agency relationship with Producers. Assuming, without deciding, that he is so entitled,. we hold that he has lost his right to such renewal commissions because of his disloyal acts against Producers. This is in essence the same ground upon which the trial court decided the case, i.e., the plaintiff had unclean hands.

The evidence concerning the plaintiff's disloyalty is as follows:

On April 27, 1964, the controlling stock in the defendant company was purchased by another company and the top management of Producers was changed. The plaintiff quickly became dissatisfied with the new management and about the middle of May 1964 talked with First National Life about working for that organization. The plaintiff told First National Life representatives that he could bring all the defendant's northwest sales force to First National. About June 1, 1964, the plaintiff assembled some of the defendant's Arizona sales personnel and told them that if they stayed with Producers their commissions would be lowered and that he wanted their agreement to go with him if he went to work for another suitable company.

On June 8, 1964, Mr. Olsen called a meeting of Producers' northwest agents. At the meeting he told the agents they would not do well under the new management of Producers and proposed that all the agents "stick together" and leave with him for another company, First National. He had some of the agents talk on the telephone to First National.

Plaintiff cancelled a proposed meeting of Producers' northwest agents at a Washington coast resort and invited all the northwest agents to come to the Washington resort a week earlier than the planned

Producers' meeting. At that time, June nineteenth, they met with representatives of First National. The plaintiff resigned from Producers on June 15 and began working for First National on June 18. About one-half of the northwest agents of Producers left their employment with Producers and about one-half of these went to work for First National.

The effect of an agent's unfaithfulness on his right to be paid earned compensation was an issue in *Marnon v. Vaughan Motor Co., Inc.*, 184 Or 103, 194 P2d 992 (1948). There, the plaintiff-agent had an agreement with the principal's Washington agent to receive one-half of the principal's Washington agent's commission; this agreement was not disclosed to the principal. The principal and the agent had an agreement whereby plaintiff was entitled to a reasonable profit on the sales of a certain type of equipment.

With regard to the effect of the secret profit we stated:

"The defendant contends that an agent who enters into a secret agreement of the kind here in question forfeits all right to recover for services rendered on his principal's behalf. There is considerable authority in support of this rule. See *Raymond v. Davies*, 293 Mass. 117, 199 N. E. 321, 102 A. L. R. 1112, and cases cited in the annotation, pp. 1119 et seq. The rule, however, is not an inflexible one, as appears from *Willis v. Van Woy*, 155 Fla. 465, 20 So. (2d) 690, and *Shulkin v. Shulkin*, supra. Partners in the latter case were held to have been guilty of taking secret profits, and it was urged that an agent who is unfaithful to his trust may be denied compensation. The court said that 'this rule is not an absolute one and the question whether a fiduciary who has not been entirely faithful will be denied compensation to which he would otherwise be entitled ultimately

rests in the discretion of the court.' Because the services of the unfaithful partners had been of real value and had resulted in handsome returns on the investment of the other partner, the court held that the rule against allowing compensation in that character of cases ought not be applied. In view of Marnon's valuable contribution to the success of Mobilift during the war years a like result is indicated here." 184 Or at 171.

We further held:

"* * * Since he did not disclose the facts it was a secret profit, and Marnon [plaintiff-agent] must account for it, not primarily to benefit Vaughan [principal] or punish Marnon, but rather to vindicate a salutary rule of policy that demands undivided loyalty of an agent to his principal." 184 Or at 174.

Years earlier Mechem wrote:

"* * * Among the other measures designed to secure the performance of this duty [agent's duty of loyalty to his principal] is the denial of compensation where the duty has not been observed; it is often said that a loyal performance is a condition precedent to the right to recover compensation, and it has been held in many cases that, where the agent is unfaithful to his trust and abuses the confidence reposed in him, he will not be entitled to any compensation for his services." 1 Mechem, Agency (2d ed), 1188.

In *Marnon v. Vaughan,* supra (184 Or 103), we held that because the agent had made a valuable contribution to the principal's success and because the agent could be divested of the fruit of his disloyalty, the secret profit, and such profit paid to the principal, the agent did not lose his right to compensation. In the present case it is likely that the plaintiff's work contributed to the defendant's success although it

cannot be determined in what degree. However, here, the trial court did not attempt to reimburse the principal for the loss caused by the agent's disloyalty. Producers had counter-claimed for damages in the amount of $175,000 allegedly caused by plaintiff's disloyalty; however, the trial court disallowed the counter-claim "on the basis that I don't think there has been sufficient evidence adduced in the case to allow the Court to render any decision in reference to any monetary damages."

It would be very difficult to assess the amount of the defendant's damages caused by the plaintiff's admitted disloyalty, yet it is very likely that the plaintiff's actions did cause the defendant some damage. Under these circumstances the trial court's decision to deny the plaintiff compensation appears to be an appropriate solution.

Affirmed.