Argued and submitted July 16, affirmed November 24, 1980, reconsideration
denied February 4, petition for review denied March 17, 1981 (290 Or 651)

# NORTHWEST BRICKLAYERS
PENSION TRUST et al,
*Appellants,*

*v.*

# ADMINISTRATION & INSURANCE OFFICE, INC.,
*Respondent.*

(A7804-06748, CA 14846)

619 P2d 954

James W. Kasameyer, Portland, argued the cause for appellants. With him on the briefs were Richard R. Carney and Carney, Probst & Cornelius, Portland.

Katherine H. O'Neil, Portland, argued the cause for respondent. With her on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

Joseph, P. J., dissenting opinion.

**WARDEN, J.**

Plaintiffs, Northwest Bricklayers Pension Trust (Pension Trust) and Masonry Welfare Trust (Welfare Trust), appeal the trial court's refusal to allow recovery of compensation paid to defendant as administrator of the trusts during the time the defendant's agent allegedly committed disloyal acts; plaintiff Pension Trust appeals the trial court's award of damages against the Pension Trust for wrongful termination of defendant as administrator of the trust.

Plaintiffs are separate entities. The Welfare Trust provides medical benefits and the Pension Trust provides retirement benefits to members of masonry trade unions. However, many of the beneficiaries of one trust are also beneficiaries of the other trust, and most of the trustees of one trust also serve as trustees of the other. Plaintiffs had separately contracted with defendant corporation to administer each trust. Defendant's president, Joseph H. Herrle, was instrumental in setting up both trusts and defendant, under Herrle's ownership and control, had administered the trusts since their origin more than 20 years ago.[1] Herrle also acted as the plaintiffs' insurance broker and was a consultant to the participating unions.

Although defendant's administration contracts did not expire until December 31, 1978, the boards of trustees of each trust terminated the contracts with defendant on March 2, 1978, citing their "lack of confidence" in Herrle as the reason for termination. Neither trust indicated that the defendant corporation's administrative tasks were inadequately performed. This lack of confidence grew out of a dispute between Herrle, together with representatives of certain labor unions participating in the trusts, and the supporters of the collections coordinator, Alfred R. Thomas, whose duties related to monitoring and collecting contributions to the trusts, tasks which formerly had been part of defendant's obligations. Thomas's supporters alleged Herrle did not cooperate with Thomas. Herrle and certain local union representatives contended, on the other hand,

---

[1] The Welfare Trust was set up in 1953 and the Pension Trust was set up in 1960.

that Thomas did not adequately perform his job as collections coordinator while receiving over $40,000 a year as compensation.[2]

The trustees' confidence in Herrle was further diminished when they were told by their counsel that Herrle threatened to "go to the Department of Labor" about Thomas and to form new trusts for a number of local unions if the defendant corporation was terminated as the administrator of the trusts. Herrle denied that he made these threats, and he alleged that the plaintiffs were threatening him with discharge before he committed any of the alleged acts of disloyalty.

With that background of discord we turn to Herrle's activities which the plaintiffs contend constitute material acts of disloyalty. In January, 1978, Herrle was invited to attend a meeting with representatives of disaffected local unions to discuss withdrawal of their locals from the Welfare Trust. Herrle attended, prepared a letter for withdrawing from the Welfare Trust and agreed that if the locals desired he would take care of the mechanics for withdrawal and that defendant would serve as administrator of a new trust. Herrle did not notify plaintiffs that he was attending this meeting or that he was preparing the necessary withdrawal documents. Within a few days of this meeting, Herrle advised the Pension Trust of methods to protect itself from disaffected local unions. Previously, in December, 1977, Herrle had informed the Welfare Trust that local unions resented Thomas's appointment as collections coordinator.

After defendant's contract was terminated, Herrle met several more times with representatives of disaffected local unions.[3] On March 11, 1977, Herrle prepared backdated participation agreements to replace the originals.

---

[2] There was substantial evidence in the record indicating that defendant continued to perform the necessary collections function and that Thomas was remiss in performing those duties.

[3] Herrle, as well as three other witnesses, indicated that Herrle did not advocate anyone's withdrawal from the Pension Trust. One witness, though, indicated that although he was not sure of when, Herrle suggested that they could set up another pension trust while only making minimum payments to the existing Pension Trust. Herrle and two other witnesses denied that this occurred.

They were signed by officers of the locals and provided that the unions, upon withdrawal from the Welfare Trust, could take their reserves with them.[4] Trustees of the Welfare Trust were present at some of these meetings.

The trial court found after the first hearing that:
" * * * * *

"The underlying cause of the breach was the general conflict between the trustees and some contributing trust members.
" * * * * * * "

The court concluded that:
"* * * * *

"This termination [by plaintiffs] breached the agreement and was without cause.

"There was evidence of some improprieties by defendant, but under the circumstances, I do not think they rose to the level of material acts of disloyalty which would justify plaintiff's (sic) early termination of the agreement.

"Neither party can be said to have unclean [sic] hands. Plaintiff's, [sic] under all the facts and circumstances, appear the more tainted."

The matter was reopened for further hearing.[5] Thereafter the court held:

"IT IS HEREBY ORDERED that plaintiffs are not entitled to prevail or recover on their monetary claims against Defendant and those claims are hereby dismissed in their entirety.

"IT IS FURTHER ORDERED that defendant is entitled to prevail and recover on its counterclaim against the [sic] The Northwest Bricklayers Pension Trust in the amount of $10,913.46 and judgment is hereby entered in favor of defendant against The Northwest Bricklayers Pension Trust in that amount."

We affirm.

---

[4] The original documents did not contain this provision but Herrle contended at trial that, although false documents, they did represent what the original agreement was.

[5] Plaintiffs were not aware of Herrle's activities concerning the backdated participation agreements at the time of the first hearing and this evidence was the basis for the rehearing. Defendant, at the time of the rehearing, withdrew its claim for damages against the Welfare Trust as a form of self-punishment for its wrongdoing.

■     Restoration of compensation is an equitable remedy and the general rule is that a fiduciary who engages in activities which are a breach of his duty of loyalty or his contract of employment is not entitled to any compensation for services rendered. Nevertheless, the rule is not inflexible and whether compensation is to be denied ultimately rests in the discretion of the court. *See Taylor v. Berkheimers,* 48 Or App 901, 618 P2d 452 *rev den* 290 Or 271 (1980); *American Timber v. Niedermeyer,* 276 Or 1135, 558 P2d 1211 (1977); *Marnon v. Vaughan Motor Company, Inc.,* 184 Or 103, 171, 194 P2d 992 (1948); *Strickland v. Arnold Thomas Seed,* 277 Or 165, 182, 560 P2d 597 (1977); *Olsen v. Producers Life Insurance,* 250 Or 517, 443 P2d 172 (1968); *Richardson v. Blue Grass Mining Co.,* 29 F Supp 658 (Ed Ky 1937), *aff'd* 127 F2d 291 (6th Cir), *cert denied,* 317 US 639 (1942).

■     We have reviewed the record and we find the trial court did not abuse its discretion in allowing defendant to retain its compensation. Herrle's sole act of disloyalty prior to defendant's termination was attendance at the January, 1978, meeting. There is no evidence that plaintiffs sustained any loss due to this disloyalty or any subsequent activities of defendant or Herrle. Furthermore, plaintiffs concede that "[t]he dissatisfaction which led to the termination of the administration contracts was not based on the performance by defendant corporation of the myriad administerial tasks necessary to trust administration." Therefore, it is not inequitable for defendant to retain its compensation.

■     Plaintiff Pension Trust also appeals the award of damages against the Pension Trust, contending that defendant breached the employment contract by disloyal acts directed specifically at Pension Trust or, in the alternative, by disloyal acts directed against the Welfare Trust, because the trusts covered substantially the same workers and have substantially the same trustees. Although the trial court indicated orally that it found that defendant breached its fiduciary duty as to the Welfare Trust because of Herrle's participation in the backdating of the participation agreements for the Welfare Trust after defendant's termination, that is not a sufficient basis for concluding that defendant breached its fiduciary duty to Pension

Trust. We are not convinced that Herrle's actions directed toward the Welfare Trust are synonymous with actions directed toward the Pension Trust, as plaintiffs contend. Neither are we convinced that defendant directed any action specifically against the Pension Trust. In fact, Herrle advised the trustees of ways to protect the trust from disaffections. We conclude, therefore, that the trial court's award of damages against the Pension Trust for termination of defendant's administration contract was not error.

Affirmed.

**JOSEPH, P. J.** dissenting.

The parties and the majority denominate this as a suit in equity. I do not agree, but I will tolerate that because it was tried that way. Treating it as a suit in equity and, therefore, it being before us on *de novo* review, I would reach quite a different result. Beginning in January, 1978, if not sometime earlier, the loyalties of the defendant, acting through its president, Herrle, began to be seriously divided. It is pretty clear to me that Herrle from that point on was constantly engaged in a series of maneuvers designed to protect his company by finding ways to keep in the plaintiffs' employment and secure employment by the dissident unions. On March 2 the Pension Trust and the Welfare Trust gave notice of their intention to discharge the defendant as of May 1. Nine days later, on March 11, while maintaining its right to keep possession of all of the plaintiffs' books, records and documents, defendant, again through Herrle, prepared fraudulent documents on behalf of the dissident unions.

If the defendant's actions up to March 2 did not rise to the level of chicanery sufficient to warrant a conclusion that it was guilty of disloyalty, its actions in refusing to turn over the records and in preparing the fraudulent documents were acts of disloyalty, however lenient a definition one would choose to employ. Unfortunately, plaintiffs did not know about the fraudulent documents when they filed their lawsuit.

The trial judge concluded that both parties had unclean hands but that the plaintiffs' hands were dingiest of all. I can find nothing in the record to sustain any

conclusion that the plaintiffs' hands were unclean with respect to this defendant.

Up to the time of the discovery of the fraudulent documents, defendant was claiming a right to continue to be compensated by both trusts (actually *four* trusts, two of which are not involved in this appeal). When the fraudulent documents were uncovered, defendant dropped its claim against the Welfare Trust, whose interests were directly affected by the fakery. The majority, note 5, *supra,* describes that withdrawal "as a form of self-punishment for its wrongdoing." That characterization is far more charitable than one I would make. Knowing that the trial judge had already tentatively decided in the defendant's favor, it was surely the better part of wisdom to drop a claim against a plaintiff it had tried to cheat. I would award no bonus points for that.

According to the trial court and the majority, the Welfare Trust does not have to pay defendant anything more, but gets back none of the money it paid defendant up to June 30. The Pension Trust, on the other hand, has to pay the defendant some $10,000 and does not get back any of the compensation it paid the defendant. Both results are unfair. The act of the defendant in dropping its claim for damages against the Welfare Trust was simply an acknowledgment that it had been caught cheating. I would permit the Welfare Trust to recover any and all sums paid the defendant after April 11, the date of the making of the fraudulent documents.

I would also hold that the Pension Trust, even though it was not the direct victim of the faked documents, was not required to treat the defendant as loyal to it in the face of the defendant's disloyalty to its related trust. Even if on March 2 the known acts of disloyal tendency were not sufficient cause for termination, the Pension Trust is entitled to benefit from the consequences of the defendant's undoubted direct disloyalty to the Welfare Trust on March 11. I would, therefore, disallow the defendant any compensation after March 11 and would allow the Pension Trust to recover any compensation paid after that date.