[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff sues to recover the value of his partnership interest pursuant to the retirement provisions of a partnership agreement. Defendant defends and counterclaims on the grounds of plaintiff's breach of fiduciary duty, breach of contract, fraud, violation of Connecticut Unfair Trade Practices Act (CUTPA), and negligence. Plaintiff replies to defendant's counterclaim by alleging the special defense of statute of limitations. The primary issue presented is the consequences flowing from plaintiff violating the fiduciary duty owed to the defendant partnership by his self-dealing.
The facts are as follows:
Defendant Storch Engineers (sometimes hereinafter Storch) is a consulting engineering firm, operating as a partnership, with its principal place of business in New Jersey and offices also in Connecticut and other northeastern states. Plaintiff was hired by defendant as an architect for its Hartford office in 1980 and became a partner in 1983 when he acquired one partnership point or a one percent interest in the partnership. Plaintiff funded additional partnership points by executing promissory notes in favor of Herbert Storch, the managing partner, and the partnership. Eventually, he accumulated 3.071 points of ownership in the partnership, and the original principal balance of $175,155.85 on his promissory notes was reduced to $117,472.26 when he ceased payment in March 1988.
Plaintiff functioned as the sole architect in the defendant's Hartford office. In the period from 1983, when plaintiff became a partner, until 1987, when plaintiff resigned, defendant's net CT Page 13408 billings in Connecticut increased from $884,523 to $2,014,661.
The partnership agreement between plaintiff and Storch (hereinafter the Agreement) provides at paragraph 13 that each partner shall
 (c) diligently attend to the business of the partnership and devote his whole time and attention thereto unless otherwise determined and authorized by the Managing Partner.
 (d) be just and faithful to the other partners and at all times give to the other partners full information and truthful explanations of all matters relating to the affairs of the partnership and afford every assistance in his power to carry on the business for the mutual advantage of his partners.
In 1983, Joseph Merluzzo, head of defendant's Connecticut operations, recruited plaintiff to invest with him in a real estate development partnership known as Highview Condominium Associates (hereinafter HCA) to build condominiums in Cromwell. Merluzzo became the managing partner of HCA and plaintiff a general partner with a 22% interest. The arrangement was kept secret from Storch. HCA hired Storch to do the architectural and engineering work for its project and plaintiff was Storch's architect-in-charge. Plaintiff appeared before a Cromwell zoning and planning board to seek approval of the plans for the project.
The fees for Storch's services to HCA were negotiated by Merluzzo and plaintiff acting in dual roles as secret partners of HCA and as representative of Storch. Although a witness for Storch testified the fees of $34,000 charged for Storch's services were low by $19,000, the court believes plaintiff's testimony that those fees were reasonable and in accordance with market rates.
Plaintiff made a profit in 1984 from his interest in HCA of $28,059, which he never revealed or accounted for to his partners at Storch.
In June 1984 Merluzzo initiated another real estate CT Page 13409 partnership, called Grandford Associates, to build an office building in Hartford. Plaintiff became a general partner in that partnership with an 8.33% share.
Merluzzo and plaintiff posted a job announcement with Storch Engineers that Storch would do the architectural and engineering work on the Grandford project. The announcement was designed to conceal Merluzzo's and plaintiff's interest in Grandford.
Merluzzo and plaintiff negotiated secretly with themselves to establish the fees Storch was to charge Grandford for Storch's services. Although defendant's witness testified those fees were low by $120,000, the court believed plaintiff's testimony that those fees were reasonable and in accordance with market rates.
Grandford suffered reverses and was unable to pay Storch's bills totalling $114,000. Plaintiff participated in decisions of Grandford to pay other creditors rather than Storch. Grandford's debt caused considerable concern to Storch. Merluzzo and plaintiff falsely assured Storch the bill would be paid by Grandford's "professional" partners obtaining bank financing.
In January 1986 plaintiff, in his capacity as Storch's architect-in-charge, wrote to Grandford formally requesting payment of Storch's long-overdue bill. This was a calculated deception by which plaintiff was concealing his Grandford involvement, in effect dunning himself and giving the illusion of an arm's-length transaction between Storch and Grandford. Eventually, Grandford was taken over by another firm and in October, 1986 the Storch bill was fully paid with interest.
Plaintiff lost $22,000 on the Grandford deal.
Merluzzo resigned from Storch in July 1986 when his participation in Grandford was discovered by Storch. At that time he told Storch that plaintiff's involvement in Grandford was "minimal." Plaintiff promised Storch to divest himself of his entire interest in Grandford. He attempted to do so but could find no takers. Storch demanded plaintiff produce the Grandford partnership agreement. Not until February 1989 did plaintiff do so and also reveal his role in HCA. Only then did Storch get the full and true picture of plaintiff's self-dealing in those two projects.
The Agreement provides at paragraph 22 that the partnership CT Page 13410 "shall purchase for the price and in the manner hereinafter set forth, the interest of (a) any partner desiring to sell his interest, or (b) any . . . retired partner." The interest of the selling or retired partner was offered at the price set forth to the remaining partners in the proportions and manner stated in the agreement until the interest was completely distributed. The Agreement provides at paragraph 23:
 For the purpose of any purchase of a partner's interest by the partnership, the value thereof shall be an amount equal to the sum of (a) the amount of his capital account, (b) the amount of his loan to the partnership, if any, . . . and (c) his percentage of distribution of profits or losses applied to the average annual net dollar volume for the last three (3) full years next preceding the date as of which such partner's interest is to be valued, . . . . The partner's interest so calculated shall be reduced by the amount of any obligation or indebtedness of such partner to the partnership unpaid at the time of such valuation, whether or not due at that time.
The Agreement also provides at paragraph 24 that the amount due a selling or retired partner shall be paid in 75 equal monthly installments for a partner whose partnership interest was five percent or less, with interest on the unpaid balance at the annual rate of 8%.
After Merluzzo's involvement with Grandford came to light and he resigned in July 1986, Storch commenced paying him for his partnership interest in October 1986 pursuant to an agreed-upon schedule and continued to pay him for almost three years. Plaintiff was allowed to purchase his proportionate share of Merluzzo's partnership interest.
Plaintiff resigned from Storch by letter dated May 1, 1987, effective as of June 30, 1987. The reasons for the resignation was poor health and dissatisfaction with the direction of the partnership. He continued to pay on his promissory notes and Storch continued to accept his payments until March 1988, some CT Page 13411 nine months after he resigned. Plaintiff duly demanded that his partnership interest be purchased and paid for by the partnership pursuant to the Agreement. Storch has refused to do so. Plaintiff's interest was redistributed and sold to the other partners.
The parties have stipulated that the plaintiff's 3.071% partnership interest had a value at the time of his resignation of $167,794.50, calculated in accordance with the formula of the agreement by taking into account the partnership's net billings for the years 1984, '85 and '86 and deducting plaintiff's negative capital account and his unpaid notes.
The defendant, while conceding the value of plaintiff's partnership interest, argues that it is not obligated to pay it because plaintiff violated the partnership agreement and its fiduciary duty to the partnership.
Before turning to the substantive merits of this case, the court must determine the matter of the choice of law to be applied. The Agreement provides at paragraph 25, "This general partnership having been established by Agreement and Amended Agreements made in New Jersey, it is to be governed, construed and interpreted in accordance with the law thereof."
As a general rule, the parties in commercial transactions can determine by agreement the state law to be applied. Syncsort,Inc. v. Indata Services, 14 Conn. App. 481 (1988); C.G.S. §42a-1-105. The above-quoted provision of the Agreement, however, contains a grammatical ambiguity as to the antecedent of the word "it." "It" would appear to relate back to the "general partnership," but could also relate to the "Agreement" because contextually that is what would be "construed and interpreted." The word "governed" also has an uncertain meaning.
Defendant points out that there is no dispute between the parties over the substantive rights created by the Agreement. It argues that the Agreement is silent as to the state law to be applied to "enforce" the Agreement. When a dispute is over the remedy for tortious behavior, the law of the forum applies.
In Illustrated Postal Card and Novelty Co. v. Holt, 85 Conn. 140
(1912), the court distinguishes between substance rights under a contract, which are determined by the laws of the place of the contract, or by agreement of the parties, and the formal CT Page 13412 remedy to be pursued, which are determined by the place of the action. id. at 143.
Both parties seem to agree that courts have abandoned the hoary hornbook maxims regarding conflicts of law and look to the balancing of interests test, set out in Restatement of Conflictof Law 2d. Applying the standards set forth at § 145 of theRestatement, this court notes that the injuries claimed by the plaintiff and defendant were suffered in Connecticut, the Agreement was negotiated and performed in Connecticut, both parties did business in Connecticut, the conduct causing the alleged injuries took place in Connecticut, and the
Having said all that, this court concludes that the laws of both New Jersey and Connecticut compel the same result on the matters at issue.
The law of both states hold that a partner bears a fiduciary relationship to his partners. Justice Benjamin Cardozo inMeinhard v. Salmon, 249 N.Y. 458, 464 (1928) equated partners with trustees and stated the oft-quoted words: "A trustee is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." That standard is incorporated in Connecticut law, Konover Dev. Corp. v. Zeller, 228 Conn. 206,218 n. 9 (1994) and in New Jersey law, Heller v. Hartz MountainIndustries, 636 A.2d 599, 603 (N.J.Super. App. 1993).
The one absolute taboo is that a fiduciary may not engage in self-dealing. As stated in Shepard, Law of Fiduciaries at 156-57 (1981), "[T]he basic rule is a strong prohibition against self-dealing. The idea is that the fiduciary should not be acting as both vendor and purchaser, whether for goods or services." See also II Brombert and Ribstein, Partnership, § 6.07 at 6:74.
A partner is also obligated to his partners to render "true accounts and full information about everything which affects the partnership." Weidlich v. Weidlich, 147 Conn. 160, 164 (1960). The Agreement between this plaintiff and defendant specifically imposes that requirement at paragraph 13(d).
The facts of this case clearly establish that plaintiff violated his fiduciary duty to the defendant by self-dealing in the HCA and Grandford projects and by concealing from the defendant those activities. Plaintiff argues that defendant CT Page 13413 suffered no harm and in fact benefited from those two projects because defendant realized substantial fees from them. The fact that defendant suffered no injury as a result of the plaintiff's disloyalty is of no consequence and acts as no excuse. As stated in Brombert and Ribstein on Partnership, § 6.07 at 6.94, the rule is "phrophylactic in nature, based on the need not only to compensate but to deter conduct that poses a risk of damage to the partnership."
In Cogan v. Kedder, Matthew Senger, Inc., 648 P.2d 875,878, (Wash. 1982), the court held that when an agent has dual responsibilities and serves interests adverse to the principal, it is of no consequence that his disloyalty did not injure the principal. "Not only does harm not define the scope of fiduciary duty, it also is not determinative of damages." at 886. It further stated that strong public policy reasons justify the rule: "If damages were measured solely by the loss to the principal, often there would be little disincentive to the agent for assuming conflicting responsibilities without disclosure." Id.
The real issue here is whether plaintiff's violation of his fiduciary duty deprives him of his right to be paid for his vested partnership interest.
Defendant first contends that plaintiff's breach of the paragraph 13(d) of the Agreement that he be "just and faithful to the other partners" excuses its performance under paragraphs 22, 23 and 24 of the Agreement to reimburse plaintiff for his partnership interest. For this defendant relies upon Restatementof Contracts.2d, § 225: "The performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused."
A condition may be expressed in the contract or supplied by the court. id., comment d., p. 168. Paragraph 13(d) is not stated as a condition in the Agreement and this court cannot infer from the entire Agreement that it is a condition.
Rather, the court construes paragraph 13(d) and paragraphs 22-24 as distinct and independent provisions so that the breach by plaintiff of paragraph 13(d) does not authorize defendant to refuse to perform paragraphs 22, 23 and 24. 17A Am.Jur.2d §§ 473 and 574. Moreover, defendant itself treated those provisions as independent, as evidenced by the fact that although Merluzzo, CT Page 13414 head of the Hartford office, initiated the HCA and Grandford deals, defendant, nevertheless, on discovering his perfidy, paid him his partnership buy-out in full.
Defendant further argues that, apart from a breach of contract theory, plaintiff cannot recover on the basis of breach of fiduciary duty for his share of future profits. It cites in support of this contention. Obert v. Environmental Research andDev. Corp., 771 P.2d 340 (Wash. 1989) which holds that a partner who violated his fiduciary duty was not entitled to the 25% offuture profits of the partnership provided for in the partnership agreement.
That case, however, is not apposite. Plaintiff here is not seeking his share of future profits but his partnership interest at the time he retired. Pursuant to the Agreement that interest is represented by "his percentage of profits or losses applied to the average net dollar volume for the last three (3) full yearsnext preceding the date as of which such partner's interest is to be valued." (underlining added) Thus it is a fixed amount determined as of the date plaintiff retired, and not measured by or dependent on future profits. The parties readily stipulated the value of plaintiff's 3.071% interest on July 1, 1987 to be $167,794.50.
Moreover, plaintiff purchased his interest by promissory notes which he paid down over the years from $175,155 to $117,472 and by his years of service to Storch. When he retired, his points were sold by Storch to the remaining partners.
Thus, plaintiff's partnership interest was vested and akin to a capital account. While neither Connecticut nor New Jersey have cases on the point, other jurisdictions have clearly held that a disloyal partner is entitled to reimbursement for his vested interest or capital contributions.
In Meechan v. Shaughnessy, 535 N.E.2d 1255 (Mass. 1989) where law partners were found to have breached their fiduciary duty to their firm, the firm argued they thereby forfeited all rights to their capital contributions. The court expressly rejected that contention, holding the disloyal partners were entitled to their interest in the partnership's reserve and capital accounts and in the partnership income earned but not distributed. The court said capital contributions "are not a form of liquidated damages to which partners can resort in the event of breach." Id. at 1266. CT Page 13415
Obert v. Experimental Research and Development, supra, upon which Storch relied as authority for denying an unfaithful partner's future partnership profits, expressly held the partner was "entitled to the amount of his capital contributions plus interest." at 349.
Staczak v. Romanik, 690 F.2d 578, 585 (6th Cir. 1982) noted the general rule, existing both before and after adoption of the Uniform Partnership Act, is that "a partner whose wrong causes dissolution of a partnership does not forfeit his partnership interest, but is entitled to receive it, less the damages caused by his breach."
60 Am.Jur.2d Partnership § 111 states: "Breach of partnership articles, whether or not committed in bad faith, do not cause a partner to lose his partnership interest."
Several reasons exist for this principle. The first is that the law abhors forfeiture. Dobson v. Dobson, 594 S.W.2d 177 (Tex. Cir. App. 1980). The second is the disloyal conduct may cause no partnership loss connected to the vested interest. Meehan v.Shaughnessy, supra at 1266. The third is the "ownership interest is derived from the formation of the partnership and is not dependent upon a partner's performance of duties and obligations under the agreement." Chapman v. Dennegan, 665 S.W.2d 643, 648
(Mo.App. 1984).
Thus, this court holds that, despite plaintiff's breach of fiduciary duty owed to Storch, he is entitled to the value of his vested partnership interest, stipulated to amount to $167,794.50. The parties disagree on the interest plaintiff should recover on that sum. The Agreement provides that plaintiff's partnership interest is payable in 75 equal monthly installments, with interest on the unpaid balance at the annual rate of 8%. Plaintiff retired as of July 1, 1987 and Storch has refused to pay any installments or any sum whatever to plaintiff.
Several issues concerning interest arise: (1) should the rate be at the Agreement rate of 8% or at the statutory rate provided in § 37-3a of 10%; (2) after the 75-month period elapsed, should the rate continue at the Agreement rate or change to the statutory rate; (3) after the 75-month period elapsed, should the debt, as to which interest should be applied, be the original principal or principal plus interest accrued and unpaid for the CT Page 13416 75-month period?
The law clearly is that when an obligation to pay money is breached, the interest rate agreed upon by the parties and not the rate provided for in §§ 37-1 and 37-3a, applies. Little v.United National Investors Corporation, 160 Conn. 534, 537-38
(1971), People's Bank v. Pullman, (CV90-03 39 325), Super. Ct., J.D. Ansonia/Milford, (February 17, 1993) (Flynn, J., );Ferrigno v. Cromwell Dev. Assoc., (CV91-0286470, Sup. Ct. J.D. Fairfield) (April 26, 1995) (Levin, J.), Bankmart v.Sorrell, 12 Conn. L.Rptr. 653, 654 (1994).
That rate continues after the maturity date of the obligation and as long as it remains unpaid. Reynolds v. Ramos, 188 Conn. 316,322 (1982). 22 Am.Jur.2d Damages § 650. Finally, although § 37-3a provides for interest at 10% "as damages for the detention of money after it becomes payable," no Connecticut cases apply that rate to a debt consisting of principal plus unpaid interest at the date of maturity. The general rule is not to "permit true compounding of interest such as occurs when accrued interest is added to principal and the whole is treated as new principal for the calculation of future interest," . . . 45 Am.Jur.2d Interest and Usury § 83.
The court accordingly determines that plaintiff is due interest on $167,794.50 from September 15, 1987, the date the parties seem to agree it was payable, to the date hereof, at the rate of 8% per annum. This comes to $109,625, which when added to the principal of $167,794 results in plaintiff being entitled to recover on his complaint $277,419.
Turning to defendant's counterclaims sounding in breach of fiduciary duty, breach of contract, fraud, violation of CUTPA and negligence, the court must first deal with plaintiff's special defense of statute of limitations interposed against these counterclaims.
Defendant filed its counterclaims on September 24, 1991. Defendant learned plaintiff was involved in Grandford in July 1986 but was told that involvement was "minimal." In 1987 and 1988 plaintiff resisted defendant's demands for a full disclosure and withheld disclosing the Grandford partnership agreement. Not until February 1989 was that agreement produced, revealing plaintiff was a general partner and had a substantial ownership interest in Grandford. Then, also, defendant first learned of CT Page 13417 plaintiff's participation in HCA and the profit he had realized from that project.
The sixth count of defendant's counterclaim, based on breach of contract is subject to a six-year statute of limitations (§ 52-576) and clearly is not time-barred. The ninth count, based on negligence, is subject to a two-year statute (§ 52-584) and clearly is time-barred.
Counts fifth (fraud), seventh (breach of fiduciary duty) and eighth (CUTPA) are governed by a three-year statute. Under our law, the statute does not begin to run so long as the defendant is engaged in a continuing course of conduct. Fichera v. MineHill Corporation, 207 Conn. 204, 208-9 (1988). A course of conduct continues when the defendant is "in breach of a duty that remains in existence after commission of the original wrong."Blanchette v. Barrett, 229 Conn. 256, 282 (1994). Such a duty continues after a wrong has been committed when there is evidence of "a special relationship between the parties giving rise to such continuing duty, . . ." Fichera v. Mine Hill Corporation,
supra, 210. A fiduciary relationship is a special relationship creating the continuing duty to disclose. Blanchette v. Garrett,
supra, 281.
The statute of limitations for CUTPA, § 42-110g(f), provides that an action must be brought within three years "after the occurrence of a violation of the chapter," and our courts have interpreted it as not delaying the start of limitation period until discovery of the deceptive practice. However, the continuing duty, derived from a fiduciary relationship, does toll the statute. Fichera v. Mine Hill Corporation, supra 207-10.
The facts establish that plaintiff failed to disclose his full involvement in Grandford and any involvement in HCA until February 1989 and that his duty to disclose as a partner continued until then. That date being less than three years before Storch filed its counterclaims, the counts of fraud, breach of fiduciary duty and violation of CUTPA are saved.
As to defendant's counterclaim of breach of fiduciary duty, the court recognizes the rule that once a fiduciary relationship is established, as is the fact here, the burden of proof of fair dealing shifts to the plaintiff and he must meet that burden by clear and convincing evidence. Konover Dev. Corp. v. Zeller,228 Conn. 206, 229-30 (1994). Clearly plaintiff has failed to do, and CT Page 13418 the court finds that plaintiff's hidden participation in the Grandford and HCA projects constituted a violation of the fiduciary obligations he owed Storch.
One consequence of such a violation is Storch is entitled to recover from plaintiff the secret profit of $28,059 plaintiff realized on the HCA deal. As stated in Brombert Ribstein asPartnership, § 6.07. p. 6:93 (1994), "The measure of damages for fiduciary breach clearly includes any profits earned as a result of the breach." C.G.S. § 34-59(1) provides that the breaching partner holds unauthorized profits "as trustee".
Pursuant to § 37-3a this court awards interest at 10% per annum on the profit of $28,059 from 1984 to 1995, amounting to interest of $30,864, for a total of $58,923.
Storch claims damages for all compensation and profit-sharing paid to plaintiff during the period of disloyalty, amounting to $164,105. The Restatement of Agency, Second at § 469 provides that "[a]n agent is entitled to no compensation for conduct . . . which is a breach of his duty of loyalty; if such conduct constitutes a wilful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned."Hegman v. Kline, 344 F. Sup. 1110, 1114 (D. Conn. 1979), rev'd on other grounds, 456 F.2d 125 (2nd Cir. 1972), interpreted that section to mean, "when a disloyal employee is paid without [the principal's] knowledge of his disloyalty, he may be compelled to return what he has improperly received."
However, other courts have examined the reasoning behind the provisions of the Restatements of Agency and Trusts, and "find the basis for refusal of compensation to a trustee, not in the theory of a penalty, but in the theory that payment is not due for services not properly performed." Lydia E. Pinkhorn MedicineCo. v. Gove, 20 N.E.2d 482, 486 (1939). Thus, the rule that a failed fiduciary may be denied compensation or be required to return compensation paid is "not inflexible and generally rests with the discretion of the court." Williams v. Queen Fisheries,Inc., 469 P.2d 583, 585 (Wash.App. 1970); Cogan v. Kidder,Matthews Signer, Inc., 648 P.2d 875, 890 (Wash. 1982); Wellesv. Van Wog, 20 So.2d 690 (Fla. 1945).
In the instant case, apart from his disloyal participation in the HCA and Grandford projects, plaintiff performed his CT Page 13419 architectural services for Storch competently and contributed substantially to the success of the firm over the period 1980 to 1987. Requiring him to repay his entire compensation would constitute undue enrichment to Storch and amount to an unjust penalty. This court exercises its discretion to deny such a result.
Storch would be entitled to the losses resulting from plaintiff negotiating Storch's fees for services to HCA and Grandford lower than the market, but this court finds those fees were reasonable and in line with market rates.
The court finds plaintiff not only violated his fiduciary duty but breached the Agreement, particularly paragraph 13(d) requiring him to give full information and truthful explanation of all matters relating to partnership affairs. Storch claims the consequences of plaintiff's secret participation in the HCA and Grandford projects and their subsequent revelation to Storch's principals, clients and the industry generally, resulted in disruption of its management, diminished professional reputation, loss of clients and a significant decline in revenues over a three-year period. A witness for Storch estimated that the Storch loss of between six to seven million dollars, was "reasonably likely," its loss of $300,000 was "absolute," and Storch's attorney argued a loss of $150,000 was minimum. This court finds this testimony conjectural, speculative and unbelievable. The witness' opinion does not allow for the activities and departure of Merluzzo, who was head of the Hartford's office and whose disloyal conduct was far more serious than plaintiff's, and does not take into account the substantial decline in demand for engineering and architectural services Accordingly, the court concludes Storch failed to prove this element of damages.
Storch's counterclaim based on violation of CUTPA § 42-110a
et seq., raises the question whether or not the derelict acts of a partner against his partnership involve "trade or commerce" as defined in § 42-110a(4). A number of Superior Court cases hold that internal strife in a partnership do not fall within the ambit of CUTPA. Lapuk v. Simons, 9 CSCR 352
(1994) (Hennessey, J.); Chester v. Schatz Schatz, Ribicoff Kotkin, 6 Conn. L. Rptr. 526, 7 CSCR 721 (1992) (O'Neill, J.). See also Quimby v. Kimberly Clark Corporation, 28 Conn. App. 660, 670
(1992).
The recent Supreme Court case of Larsen Chelsey Realty Co. v.CT Page 13420Larsen, 232 Conn. 980 (1995) involved a suit by a real estate firm against its former president for breach of fiduciary duty and CUTPA. The tortious acts of the defendant included falsely telling plaintiff's employee-brokers that plaintiff was going to close, writing to plaintiff's clients that plaintiff would merge with another firm, and writing to the New Haven board of realtors that plaintiff was closing and plaintiff and other brokers were transferring to that other firm. The court, noting that CUTPA applies to "a broad spectrum of commercial activity" and "must be liberally construed," id. at 492, held that defendant's tortious conduct occurred "outside the confines of the employer-employee relationship," involved the services of plaintiff and defendant as real estate brokers in New Haven, and thereby "implicated trade or commerce under CUTPA." at 494.
In the instant case, plaintiff, an architect, violated the Code of Ethics contained in the Rules and Regulations of the State Architectural Licensing Board by receiving compensation from both HCA and Storch on the HCA project (§ 20-289-10a(2) and failing to fully disclose his interests to Storch on the HCA project (§ 20-289-10a(3). He violated similar provisions of the Code of Ethics and Professional Conduct of the American Institute of Architects. (§ R. 3.201 and R. 3202) He appeared before Cromwell and Hartford planning and zoning boards in the role of a disinterested professional architect certifying to plans and in the hidden role as part owner of the projects. He deceived not only Storch but his co-investors of HCA and Grandford.
Thus plaintiff's tortious conduct was outside the narrow scope of his partnership relationship. Rather it tainted his profession and involved the public, and clearly implicated trade or commerce under CUTPA. The court finds such conduct, by offending public policy established by the ethical rules of the profession of architecture and by violating settled principles of common law, constitutes a breach of CUTPA, Conway v. Prestia,191 Conn. 484, 492-93 (1983).
Pursuant to § 42-110g(a) and (d), the court is authorized to award reasonable attorneys' fees and punitive damages. The court herewith awards Storch attorneys' fees in the amount Storch incurred of $110,003.
In addition, punitive damages may be awarded under CUTPA when the evidence reveals "a reckless indifference to the rights of CT Page 13421 others or an intentional and wanton violation of those rights."Gargano v. Heyman, 203 Conn. 616, 622 (1987); Nielsen v.Wisniewski, 32 Conn. App. 133, 138 (1993).
While plaintiff did not cheat Storch, in the sense he set lower than fair fees for Storch's services to HCA and Grandford, he did deceive his Storch partnership by his secret dealings. Moreover, he believed even throughout this trial that his conduct was justified by his providing business for Storch. This blatant breach of fiduciary duty amounted to a reckless indifference to the right of the Storch partners to his undivided loyalty, and an intentional and wanton violation of that right. Gargano v.Heyman, supra at 622. For it this court awards Storch $50,000 in punitive damages.
Thus plaintiff may recover of defendant on his complaint the sum of $277,419, and defendant may recover of plaintiff on its counterclaims the sum of $218,923. Each party shall be entitled to costs.
Robert Satter, State Judge Referee